NO.    94-304

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

DIANNE POYNTER SACCO,

        Plaintiff and Appellant,

    -v-

HIGH COUNTRY INDEPENDENT PRESS, INC.,
GLENN F. SORLIE, DEVON ANN SORLIE,
and RICKY L. DIGHANS,

        Defendants and Respondents.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

        Stephen C. Pohl, Bozeman, Montana

        For Respondents:

        Michael J. Lilly, Bozeman, Montana; Barry G.
        O'Connell, Bozeman, Montana

FILED

MAY 19 1995

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Heard:      February 14, 1995
Submitted:  February 16, 1995

Decided:    May 19, 1995

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from several Eighteenth Judicial District Court, Gallatin County, orders on motions for summary judgment. We reverse and remand.

The following are issues on appeal:

I. Did the District Court err by granting Dighans' motion for summary judgment with respect to Sacco's claim that Dighans violated Sacco's civil rights under 42 U.S.C. § 1983?

II. Did the District Court err by granting Dighans' motion for summary judgment on the issue of negligent infliction of emotional distress?

III. Did the District Court err by granting the Sorlies', High Country Independent Press (HCIP's) and Dighans' motions for summary judgment on the issue of intentional infliction of emotional distress?

IV. Did the District Court err by granting the Sorlies' and HCIP's motion for summary judgment on the issue of defamation?

V. Did the District Court err by granting the Sorlies', Dighans' and HCIP's motions for summary judgment on the issue of malicious prosecution?

FACTUAL AND PROCEDURAL BACKGROUND

Parties

Since this case is being remanded for trial, it is not appropriate that we set forth the facts of this case in any more detail than is necessary to resolve the legal issues raised.

At the outset, however, we outline the parties to assist in an

2

overall understanding of the case. The plaintiff, Dianne Poynter Sacco (Sacco) was employed at the High Country Independent Press newspaper in Belgrade, Montana, as a photographer/reporter. She left her position on October 19, 1989. High Country Independent Press, Inc. (HCIP), a corporation, owns the newspaper and Devon and Glenn Sorlie (Sorlies) are the officers and stockholders of HCIP. After Sacco left the employ of HCIP, the Sorlies made allegations to the Belgrade Police that Sacco had stolen proof sheets and photographs from the HCIP offices. Ricky Dighans (Dighans) is a sergeant with the Belgrade Police Department and was the investigating officer assigned to the case against Sacco brought as result of the Sorlies' allegations.

The following allegations form the basis of Sacco's complaint filed August 16, 1991:

1. "Between the dates of June 27, 1990 and December 31, 1990, Defendants HCIP and Sorlies **maliciously** conspired to bring a criminal prosecution against Plaintiff, and . . instituted a criminal action against Plaintiff by supplying to Defendant Dighans false and misleading information." The false information was that the plaintiff stole certain photographic negatives and contact sheets from HCIP between October 19, 1989 and June 28, 1990.

2. Defendant Dighans swore to a complaint before the Belgrade City Judge, alleging that Sacco committed the offense of theft of photographic negatives and proof sheets and Dighans should have known that the information in the complaint was false. Dighans knew or should have known that the photographs and negatives were

3

owned by the plaintiff. Further, Dighans knew or should have known that there was a lack of probable cause for any criminal prosecution.

3. Defendant Glenn Sorlie "falsely, maliciously, and with the intent of injuring Plaintiff and her reputation, informed Plaintiff's employer that Plaintiff had stolen several photographs from [HCIP]." Additionally, the Sorlies provided "additional false and misleading information to Belgrade City Attorney William Schreiber," which resulted in the continuation of criminal proceedings against Sacco. Glenn Sorlie also approached Sacco at her place of employment and accused her of stealing the photographs from HCIP, threatened her and caused her to fear for her safety.

4. The defendants "acted with malice and without probable cause in causing the Complaint to be filed against, and in instigating and continuing the prosecution of Plaintiff" and that the statements made by defendants Sorlies to Dighans, Schreiber and plaintiff's employer were "false, defamatory and damaging to Plaintiff."

5. The defamatory statements caused great injury to her reputation, and she has suffered great mental anguish, physical discomfort and inconvenience as well as incurring expenses in defending the charge.

The criminal charges filed against Sacco were eventually dismissed because it was subsequently determined that prosecution of the alleged criminal conduct was barred by the statute of limitations.

Sacco alleged the following five counts in her complaint:

1. Malicious Prosecution;
2. Defamation
3. Intentional Infliction of Emotional Distress
4. Negligent Infliction of Emotional Distress
5. Civil Rights Violation

Eventually, motions for summary judgment on all counts of the complaint were filed by the defendants. In a number of orders filed by the District Court, the various summary judgment motions on all five counts of the complaint were granted. Sacco appealed from these orders on May 20, 1994. We now address the question of whether summary judgment was correctly granted on the five counts of Sacco's complaint.

## STANDARD OF REVIEW

> Our review of a summary judgment order is <u>de novo</u>. Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c), M.R.Civ.P. The initial burden is on the moving party to establish that there is no genuine issue of material fact; and once met, the burden shifts to the party opposing the motion to establish otherwise.

Spain-Morrow Ranch Inc. v. West (1994), 264 Mont. 441, 444, 872 P.2d 330, 331-32. (Citations omitted.)

## INTRODUCTION

Sacco alleged that defendant Dighans committed violations of her civil rights under 42 U.S.C. § 1993. She also alleged that Dighans committed the tort of negligent infliction of emotional distress. She alleged that the Sorlies, HCIP and Dighans committed the tort of intentional infliction of emotional distress. She further asserted that HCIP and the Sorlies defamed her and finally, that all defendants engaged in malicious prosecution. We address

5

all five counts and the grant of summary judgment on each in turn.

I. CIVIL RIGHTS VIOLATION UNDER 42 U.S.C. § 1983 - COUNT V

Sacco argues that the District court erred by granting Dighans' motion for summary judgment as to Count V of the complaint, which alleged violation of Sacco's civil rights under 42 U.S.C. § 1983. Dighans argues that he is protected from Sacco's claims by the doctrine of qualified immunity. The District Court agreed with Dighans and concluded that Dighans had probable cause to prepare and file the complaint against Sacco. The court also concluded that Dighans had complied with the "objective reasonableness" mandate set forth in Malley v. Briggs (1986), 475 U.S. 335, 344-45, 106 S.Ct. 1092, 89 L.Ed.2d 271. We disagree.

Under Harlow v. Fitzgerald (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, government officials performing discretionary functions are shielded from liability for civil damages only where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have knowledge. Harlow, 457 U.S. at 818. Sacco contends that in the instant case, her clearly established right to be free from arrest without probable cause was violated by Dighans. She further states that no reasonably competent officer would have concluded from the complaint submitted in the instant case that probable cause existed for an arrest.

Harlow presents a two-pronged test to determine whether an official will be granted qualified immunity - first, we must consider whether a clearly established right has been violated and

second, we must determine whether a reasonable person or official would have known that his conduct violated that right. This test was made applicable to state police officers in Malley. Malley, 475 U.S. at 341.

As stated above, Sacco claims that her right to be free from arrest without probable cause, was violated by Dighans. The right to be free from arrest except upon probable cause has been clearly established in the Ninth Circuit. See Kennedy v. Los Angeles Police Dept. (9th Cir. 1989), 901 F.2d 702, 706; Barry v. Fowler (9th Cir. 1990), 902 F.2d 770, 772-73; McKenzie v. Lamb (9th Cir. 1984), 738 F.2d 1005, 1007; Gilker v. Baker (1978), 576 F.2d 245, 247; Haupt v. Dillard (D.Nev. 1992), 794 F. Supp. 1480, 1490; Sunn v. City and County of Honolulu (D. Hawaii 1994), 852 F. Supp. 903, 906-07. Accordingly, because the right Sacco alleges to have been violated is a clearly established right, the first prong of the Harlow test is satisfied. Since Sacco's arrest was the result of Dighans' application for and his obtaining an arrest warrant on the basis of his complaint, the relevant question then becomes whether, "on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue. . ." Malley, 475 U.S. at 341.

The Notice to Appear and Complaint prepared by Dighans and filed against Sacco stated that:

> The [Defendant Sacco] is charged with violating [Montana Code] Section # 45-6-301 . . in that said defendant did knowingly or purposely or negligently commit the offense of theft of photo negatives/proof sheets between Oct. 19, 1989 and 28 June 1990 from High Country Independent Press. To wit: wildlife photos.

7

The Notice to Appear and Complaint was signed by Dighans, issued by the Belgrade Police Department, dated November 5, 1990, and signed by City Judge Gordon L. Smith.

In his deposition, Judge Smith stated that while he could not remember the specifics of the determination of probable cause, it was his practice to place the officer under oath and that the officer would swear "to the truthfulness of this Complaint and to those facts that he had entered on the Complaint." Judge **Smith** stated that he could not remember anything that Dighans or the City Attorney had told him other than what was set forth in the Notice and Complaint.

Also during Judge Smith's deposition, Sacco asked whether Dighans had advised the deponent, Judge Smith, of certain specific facts when he applied for the arrest warrant. Sacco asked whether Dighans told the magistrate that he (Dighans) had conversed with Sacco and that she had informed him that she was the owner of the negatives and proof sheets. She also asked if Dighans told Judge Smith that Sacco's attorney had written a letter to Dighans informing him that Sacco owned the photo negatives in question. Sacco also queried as to whether Dighans had informed Judge Smith that Sacco had purchased the film used to take the photos and shot the film **on** her own **time. Last,** Sacco questioned Judge Smith as to whether Dighans ever informed him (Smith) that the complaining witnesses (Sorlies) had written a letter to the Montana Unemployment Division stating that they had an arrangement with Sacco whereby she could use their photography equipment and

materials in exchange for their use of her photos. Judge Smith testified that he did not remember being provided with any of that information.

Dighans' affidavit filed in opposition to Sacco's Motion for Summary Judgment recounts the details of his investigation, including his various discussions with Sorlies and witnesses and with the City Attorney prior to making application for the arrest warrant. On the matter of what he swore to Judge Smith to establish probable cause, however, Dighans' affidavit simply states that he "presented [himself] to Belgrade City Judge Smith and under oath swore to the truth of the matters set forth in the Complaint," and then orally asked that the warrant be issued.

We conclude that the Notice to Appear and Complaint does not set forth sufficient facts which, in combination with Judge Smith's examination of Dighans, satisfy the statutory requirement that it appear "from the contents of the [written] complaint and the examination [on oath] of the complainant and other witnesses, if any, that there is probable cause to believe that the person against whom the complaint was made has committed an offense." See § 46-6-201, MCA (1989), the statute in effect in November 1990, when Dighans applied to file the complaint and obtain the arrest warrant against Sacco.

In State ex rel. Wicks v. District Court of Tenth J.D. (1972), 159 Mont. 434, 498 P.2d 1202, interpreting that same language from § 95-603, RCM 1947, we held unlawful the issuance of an arrest warrant where the complaint of the deputy prosecutor, under oath,

9

disclosed nothing more than his "bald conclusion" that the defendant committed the offense charged on a date certain and where neither the complainant nor justice of the peace could remember whether the complainant was examined under oath. <u>Wicks,</u> 498 P.2d at 1203-04. We stated:

> The showing of "probable cause" required for issuance of a warrant of arrest is similar and analogous to the showing of "probable cause" required for the issuance of a search warrant. [Citing Application of Gray (1970), 155 Mont. 510, 473 P.2d 5321. As applied to the facts of this case, such showing must disclose facts which will enable the magistrate to make a judicial determination of the existence of probable cause and undisclosed information possessed by law enforcement officers is irrelevant.

<u>Wicks,</u> 498 P.2d at 1204.

The complaint, here, sets forth nothing but Dighans' conclusory statement that Sacco committed the offense of theft of the photo negatives and proof sheets. There was no affidavit of probable cause or other written statement of probable cause before the city judge when the decision was made to issue an arrest warrant nor were there any underlying facts within the body of the complaint itself from which the magistrate could make a judicial determination of the existence of probable cause. Moreover, Judge Smith testified that he could not remember being provided with any more information than what appeared on the face of the complaint, and Dighans' affidavit does not disclose that he provided Judge Smith with any more information than what was on the face of the complaint

We hold that what appeared on the face of the complaint is an insufficient basis, as a matter of law, upon which to premise a

10

finding of probable cause. Wicks 498 P.2d at 1203-04. If the officer simply swears to his bald conclusions that the defendant committed the crime charged without either orally or in writing swearing to the factual basis for those conclusions, the magistrate has no legal basis on which to make the statutorily required finding of probable cause for the issuance of the warrant of arrest or summons (§ 46-6-201, MCA (1989)). We also conclude that a reasonably competent officer would have known of that legal requirement and that such an officer would have concluded that an arrest warrant could not issue.

Whether, as a result of his investigation, Dighans may have possessed sufficient information that would have lead a reasonably competent officer to conclude that there was probable cause to request an arrest warrant is not the issue. What is critical is that whatever information Dighans possessed, he did not provide that information, on oath, to the issuing magistrate. See Wicks, 498 P.2d at 1204, (undisclosed facts possessed by law enforcement are irrelevant as to the judicial determination of probable cause) and Gray, 473 P.2d at 536-37, (issuance of search warrant will not be upheld on basis of information not contained in the affidavit). Accordingly, it is, likewise, not necessary that we discuss Dighans' failure to inform Judge Smith of the possibly exculpatory information that he possessed.

Under Malley, the shield of qualified immunity is lost where the warrant application is "so lacking in indicia of probable cause" that it is unreasonable to believe that probable cause

11

exists.  Malley, 475 U.S. at 345.  That is precisely the situation here.  Dighans failed to present any facts to Judge Smith on which a judicial determination of probable cause could be made for the issuance of the arrest warrant against Sacco. That Judge Smith issued the warrant, nonetheless, does not exonerate Dighans' failure.  Malley, 475 U.S. at 345-46.

Accordingly, we hold that the District Court erred as a matter of law in granting Dighans' summary judgment motion on Sacco's 42 U.S.C. § 1983 claim, and we remand for further proceedings.

INTRODUCTION    TORT OF EMOTIONAL DISTRESS

Sacco alleges two counts of the tort of emotional distress - negligent and intentional infliction of emotional distress.  The decision to recognize emotional distress as an independent tort has been in gradual evolution for courts nationwide, and Montana is no exception.  In the past, we have recognized the tort of negligent infliction of emotional distress as an independent cause of action in only a limited context.  We have also recognized the tort of intentional infliction of emotional distress as an independent cause of action but under the traditional analysis of that tort, we have not encountered a case which would entitle a plaintiff to damages for the cause of action.

After thoroughly reviewing our own case law and the authorities from other jurisdictions, we conclude that it is appropriate that we join a multitude of jurisdictions in recognizing both torts as independent causes of action with recovery for damages based upon satisfaction of the standard we set

12

forth in the instant case. An independent cause of action for the tort of infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission. We first review the development of Montana case law involving emotional distress issues and then address the formulation of the "test" upon which an independent cause of action for the tort of emotional distress must be based.

II.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS - COUNT IV

Sacco asserts that the District Court erred by granting Dighans' motion for summary judgment as to Count IV, Negligent Infliction of Emotional Distress. Dighans contends that the tort of negligent infliction of emotional distress has been recognized by Montana in a very narrowly defined context. He further states that Johnson v. Supersave Markets, Inc., (1984), 211 Mont. 465, 686 P.2d 209, addressed the concept of emotional distress as an element of damages, not as a distinct tort. Therefore, according to Dighans, Sacco was wrong to rely upon Johnson for her contention that her claim of negligent infliction of emotional distress was wrongly denied.

Whether the tort of emotional distress may be pled and proved as an independent "stand alone" cause of action, as distinguished from being an element of damages in some other tort action, has been the subject of much discussion and controversy. The traditional rule has been "that there is no recovery for the

13

negligent infliction of mental distress alone." Rodrigues v. State

(Hawaii 1970), 472 P.2d 509, 518. Additionally,

> [t]he cases contain the broad statement that there is no duty to refrain **from** the negligent infliction of mental distress. Thus the paramount issue is characterized as one of duty: whether the plaintiff's interest in freedom from mental distress is entitled to legal protection from defendant's conduct. Duty, however, is a legal conclusion which depends upon "the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." Therefore, in determining the duty imposed on the defendant, if any, we must weigh the considerations of policy which favor the plaintiff's recovery against those which favor limiting the defendant's liability.

Rodriques, **472** P.2d at 518-19. (Citations omitted.)

The major policy issues which have historically rendered courts reluctant to allow recovery for emotional distress are concern over fraudulent **claims,** a floodgate of litigation and unlimited liability for defendants. These policy concerns have served as impediments to recovery for the independent tort of emotional distress. Clinch and Johnson, Compensation of Emotional Distress in Montana: Distinctions Between Bystanders and Direct Victims, 47 Mont.L.R. 479 (1986).

Courts have allowed recovery for emotional distress but only in limited cases where the genuineness of the mental distress could be adequately determined, such as recovery for emotional distress damages upon proof of another cause of action and by plaintiffs who have suffered physical impact or a physical manifestation of the emotional distress claimed. Clinch and Johnson at 480-481.

These exceptions to the general rule, however, have not proved to be the panacea anticipated. Damages for emotional distress with

14

a host cause of action, known as "parasitic" damages, have been recovered even in cases where the independent action giving rise to emotional distress damages is trivial. Even in cases where the courts have required a physical injury or threat of physical injury in order to recover for emotional distress, plaintiffs have been allowed to recover where they have suffered only the slightest impact. Furthermore, even in jurisdictions which require that the plaintiff physically manifest the emotional impact, slight physical manifestations will suffice in establishing emotional distress. In many instances, the exceptions have swallowed the rule and the dangers of fraudulent claims, opening the floodgates of litigation and unlimited defendant liability have not been prevented by requiring that emotional distress be in the form of "parasitic" damages, or accompany physical injury or present physical manifestations of emotional distress. Clinch and Johnson at 480-483.

The types of cases mentioned above concern plaintiffs who were direct victims of a defendant's negligent conduct. However, there is another class of plaintiffs for whom courts have allowed recovery due to the negligence of defendants - "bystander" victims. Bystander victims are those who observe the injury or death of another person and suffer resultant emotional distress. Some courts allow recovery for emotional distress of bystanders only if the bystander was also "in close enough proximity to an accident to have been placed in actual physical danger, and, that as a result of being within the 'zone of danger' a plaintiff-bystander's

**emotional** suffering was deemed genuine because of the fear of that physical danger." Clinch and Johnson at 483. The very narrow rule was eventually expanded based on the principle of foreseeability that the bystander would suffer emotional distress. However, even when the bystander exception allowed recovery without physical injury, compensation was still sometimes denied to a body of "seemingly deserving plaintiffs." Clinch and Johnson at 483.

We begin our resolution of Sacco's case with a review of Montana case law on emotional distress involving both bystanders and direct victims. We discuss Montana case law wherein we have allowed recovery for emotional distress based on traditional exceptions to the general rule that there is no recovery for negligent infliction of emotional distress. Our review includes those cases where we have allowed recovery for emotional distress based upon some accompanying physical injury or **some** physical manifestations of emotional distress, where recovery for emotional distress damages has been based upon an independent "host" cause of action and where recovery for emotional distress has been found for "bystanders," persons who observe the death or serious injury of another. We then discuss cases in which we have addressed the tort of negligent infliction of emotional distress as a distinct cause of action for persons who have been the direct victims of emotional distress. As can readily be seen from this review, the case law demonstrates that courts, including this Court, have struggled with the issue of how and whether to compensate for emotional distress, with the resultant development of a body of confusing, unclear and

16

sometimes inconsistent precedent.

## Physical Impact Rule

The first case under Montana law involving mental suffering accompanying physical injury, Kennon v. Gilmer (1885), 5 Mont. 257, 5 P. 847, was discussed by the United States Supreme Court in Kennon v. Gilmer (1889), 131 U.S. 22. Kennon involved an action to recover for personal injuries suffered when plaintiff, a passenger on a stagecoach, was forced to jump from the stagecoach when the horses became unmanageable, broke the pole of the coach and "took fright." Kennon, 131 U.S. at 23. Kennon sustained a broken leg in the fall and the leg was ultimately amputated.

On appeal from a judgment for the plaintiff in the amount of $20,750, the defendant complained of a jury instruction which allowed the jury to consider both bodily and mental pain and suffering, (but not mental pain alone.) The Kennon court, in affirming the use of the instruction, stated:

> But the instruction given only authorized them, in assessing damages for the injury caused by the defendants to the plaintiff, to take into consideration "his bodily and mental pain and suffering, both taken together," ("but not his mental pain alone,") and such as "inevitably and necessarily resulted from the original injury." The action is for an injury to the person of an intelligent being; and when the injury, whether caused by wilfulness or by negligence, produces mental as well as bodily anguish and suffering, independently of any extraneous consideration or cause, it is impossible to exclude the mental suffering in estimating the extent of the personal injury for which compensation is to be awarded.

Kennon, 131 U.S. at 26.

## Physical Manifestation Exception

In Cashin v. Northern Pacific Ry. Co. (1934), 96 Mont. 92, 28

17

P.2d 862, the plaintiff was hanging clothes just beyond her kitchen door when there was a blast from work on a nearby railroad line. The railroad had been using dynamite to remove large boulders from the pathway of the rail line. The following facts and testimony are pertinent to our discussion of the Cashin case:

> She [the plaintiff, Mrs. Cashin,] testified that she heard the detonation and saw rocks falling about the yard; she raised her arms and felt pain between her shoulders and knew no more until some time later, when she regained consciousness in a chair in the house.
>
> Dr. J. L. McCarthy, of Butte, described Mrs. Cashin's condition as he found it shortly after the blasting and continuing thereafter as that of shattered nerves from shock comparable to that of shell-shocked veterans.
> Mrs. Cashin testified that, while she had been nervous before and had been "troubled" by former blasts so that, at night, she was made nervous by the passage of the watchman's car on the track as indicating that another blast might be set off in the night, her present condition was due to the shock of this last blasting.

Cashin, 28 P.2d at 865. An action was brought to recover for " 'severe and violent shock, both of body and mind,' causing permanent impairment of plaintiff's health." Cashin, 28 P.2d at 865. Plaintiff was awarded $2,000 in damages and the defendant appealed contending that there could be no recovery for the fright or shock because there was no physical injury. We held that a cause of action existed because the plaintiff had suffered a physical injury in the form of "nervous shock or paroxysm, or a disturbance of the nervous system" which fell in the category of physiological, not psychological injury. Cashin, 28 P.2d at 866. Thus, we concluded that the shock or fright occasioned by the blast was itself a physical injury

18

Kelly v. Lowney and Williams (1942), 113 Mont. 385, 126 P.2d 486, was a personal injury action wherein the court's instruction required that the jury consider, in assessing damages, the deceased plaintiff's:

> fright and mental shock, if any, and all pain and suffering, if any, of mind and body, insofar as caused by fright and mental shock, if any. Also her, Nellie Kelly's death. You may also consider any impairment of the plaintiff's health, physical or mental, as a consequence of fright or shock, if any, whether the impairment be permanent or only temporary.

Kelly, 123 P.2d at 488.

Nellie Kelly had been "injured" when a neighbor's car crashed into the Kelly home, severely frightening her. Nellie did not come into physical contact with the car but heard the crash because she was in the house at the time. After the crash, Nellie was worried, nervous, could not sleep and would not sleep in her room but slept in the living room where she was subject to a draft. She died about six months after the crash from complications from colds, ostensibly "caught" from sleeping in a drafty place.

At trial, we found error with the above instruction and remanded the case for a retrial of the cause of action. However, the Court premised its finding of error on that part of the instruction which instructed the jury to consider Kelly's death in assessing the damages. We concluded that the jury should not have considered Kelly's death because the crash was not a proximate cause of death and any damages award would naturally be much higher if the jury considered the plaintiff's death, as well as her injuries. The Court did state that in Montana, "there may be

19

recovery for damages for personal injuries occasioned by fright or mental shock though there be no physical contact," citing Cashin. Kelly, 126 P.2d at 488. Although we did not discuss our reasoning for allowing the jury to consider the plaintiff's fright and mental shock, it appears that the Court considered Kelly's fright and shock to be a physical injury in and of itself as in Cashin.

"Parasitic" Damages

This Court upheld an award for damages for pain and mental anguish in a case with a host cause of action involving real property in the form of nuisance, trespass and negligence claims in French v. Ralph E. Moore, Inc. (1983), 203 Mont. 327, 661 P.2d 844. Gasoline from the neighboring Texaco station contaminated and polluted the Frenchs' home and restaurant, forcing the closure of the restaurant and forcing the French family to live under uninhabitable conditions. Noting that previous Montana cases had allowed for the recovery of damages for emotional distress when the underlying action was injury to real property, the Court "[held] that damages for mental anguish are recoverable in a negligence action where the claim is that the defendant has interfered with the use and enjoyment of plaintiff's land. No sound reason exists to hold otherwise." French, 661 P.2d at 848.

Damages for emotional distress in a wrongful death action, were allowed for the first time in Dawson v. Hill and Hill Truck Lines (1983), 206 Mont. 325, 671 P.2d 589. In Davison, parents brought suit when their son was killed in a traffic accident. This Court held that damages for "the sorrow, mental distress or grief

20

of the parents of a deceased minor [child are] recoverable in a wrongful death action. . ." Dawson, 671 P.2d at 590. The Davison court addressed the argument that mental distress damages are difficult to allocate by stating:

> Montana allows the estate of a decedent to recover damages for the decedent's pain suffered prior to death. Surely a jury which can lawfully weigh such intangible damage can be trusted to fairly compensate for the grief suffered by the survivors.

Dawson, 671 P.2d at 593. The Dawson Court then limited the mental distress damages in a wrongful death action by stating that "[t]he mental distress for which recovery can be sought under the rationale of Dawson, is limited to mental anguish, sorrow or grief resulting from the death. damages which are caused by the loss of decedent's life." Dawson, 671 P.2d at 593.

The leading case involving emotional distress recovered as parasitic damages is Johnson v. Supersave Markets, Inc. (1984), 211 Mont. 465, 686 P.2d 209. In Johnson, plaintiff's wife had written a check at the Supersave Market which was subsequently returned for insufficient funds. Plaintiff's wife had signed his name on the check. After Supersave made a series of efforts to collect the funds, it assigned the debt to a collection agency and then the debt was assigned to the Missoula County Attorney's office for prosecution. At a later date, Johnson made restitution on the delinquent draft, receiving a receipt for full payment.

At about that same time, the county attorney's office, which had never been able to contact Johnson, attempted to verify restitution. Supersave could not confirm or deny restitution but

21

the collection agency denied restitution, and a warrant was issued for Johnson's arrest. Johnson was stopped in December of 1979, on an unrelated charge and **ultimately,** arrested, booked and fingerprinted for the bad check charge. He was able to post bond and was released two and one-half hours later. The charges were subsequently dismissed.

Johnson brought an action for unlawful arrest and negligent imprisonment. We concluded that Supersave had acted negligently in two ways - first, in cashing the check without proper identification and second, in failing to terminate the collection process upon Johnson's payment of the delinquent draft.

Although we were reluctant to permit damages for "specious emotional upset," we discussed cases such as Versland v. Caron Transport (1983), 206 Mont. 313, 671 P.2d 583, and Dawson where we had allowed recovery for emotional distress, as well as other case law wherein recovery was allowed when the emotional distress was intentionally inflicted. We then held that we would adopt a "species of case approach which [would require] a factual analysis of each case to determine whether the alleged 'emotional distress' merits compensation." We stated, "[i]n determining whether the distress is compensable absent a showing of physical or mental injury, we will look to whether tortious conduct results in a substantial invasion of a legally protected interest and causes a significant impact upon the person of plaintiff." Johnson, 686 P.2d at 213.

We then applied the test to Johnson and held that Johnson's

22

right to liberty was violated when he was arrested, booked and charged for issuing a bad check for which he had already made restitution. "Respondent's right to liberty is legally protected from such invasion and his humiliation, embarrassment and other 'emotional distress' proximately caused by such intrusion can certainly be considered substantial." Johnson, 686 P.2d at 213.

Johnson was followed by First Bank (N.A.) - Billings v. Clark (1989), 236 Mont. 195, 771 P.2d 84, wherein this Court followed the rule set forth in Johnson which stated that "[a] jury instruction about damages for emotional distress is warranted, in the absence of any physical or mental injury, only if the defendant introduced some proof that [tortious conduct] resulted in 'a substantial invasion of a legally protected interest and [caused] a significant impact on the person."' First Bank, 771 P.2d at 91. We noted, circuitously, that the legally protected interest in the instant action was "the interest in freedom from emotional distress." First Bank, 771 P.2d at 91. We ultimately held that:

> 1. The requirement of a significant impact indicates that the emotional distress suffered by the victim must be severe.
> .
> 2. A district court has the duty of determining the threshold question of whether any proof of such severe emotional distress exists sufficient to raise a question of fact for the jury. Absent any such proof, a jury instruction on damages for emotional distress is improper.

First Bank, 771 P.2d at 91. (Citations omitted.) The First Bank Court concluded that the district court had erred in instructing the jury on emotional distress damages because the evidence introduced during trial was "insufficient to raise a question of

23

fact about the existence of severe emotional distress," and therefore, the question of emotional distress damages should not have reached the jury. First Bank, 771 P.2d at 91.

In Day V. Montana Power Co. (1990), 242 Mont. 195, 789 P.2d 1224, we disallowed recovery of damages for emotional distress associated with the defendant's negligent damage to real property. Days claimed that their restaurant was destroyed by fire when natural gas migrated along an underground service line, accumulated in the restaurant and was ignited by a pilot light. We recounted other "parasitic damages" cases and stated that this was not such a case. We stated that French, although it concerned a host cause of action as damage to real property, was really a trespass to property action, which is a legally protected interest. We reversed the award of damages for emotional distress and held that "[w]e decline to extend recovery for emotional distress damages to cases where the defendant negligently damages or destroys real property and the plaintiff suffers no physical injury. MPC negligently destroyed the Days' restaurant and Days received adequate compensation for that destruction." Day, 789 P.2d at 1227.

Bystander Rule

Versland addressed the question of whether a spouse could recover for negligent infliction of emotional distress when she witnessed her husband's traffic collision with the defendant's semi-truck. We discussed earlier cases from other jurisdictions which had held that there could be no recovery for emotional

24

distress absent physical impact and cases which held that recovery was only available for those persons within the "zone of danger."

We then relied upon the case of Dillon v. Legg (1968), 69 Cal.Rptr. 72, 441 P.2d 912, wherein the California Supreme Court allowed recovery for emotional distress suffered by a mother who witnessed her child killed by a passing motorist as the child was crossing the street. The court relied upon the foreseeability that witnessing the death or injury of a child would cause emotional distress in a parent. The Dillon court, in forming its test for recovery for emotional distress in such cases, stated,

> [s]ince the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis. We cannot now predetermine defendant's obligation in every situation by a fixed category; no immutable rule can establish the extent of that obligation for every circumstance of the future. We can, however, define guidelines which will aid in the resolution of such an issue...

Versland, 671 P.2d at 585, citing Dillon, 441 P.2d at 920. Using the Dillon test for foreseeability of bystanders as a basis, the Versland Court formulated its own similar test for negligent infliction of emotional distress which provided as follows:

> 1. The shock must result from a direct emotional impact upon the plaintiff from the sensory and contemporaneous perception of the accident, as contrasted with learning of the accident from others after its occurrence.
> 2. The plaintiff and victim must be closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.
> 3. Either death or serious physical injury of the victim must have occurred as a result of the defendant's negligence.

25

Versland, 671 P.2d at 588.

## Negligent Infliction of Emotional Distress as an Independent Cause of Action

In Shiplet v. First Sec. Bank of Livingston (1988), 234 Mont. 166, 762 P.2d 242, the plaintiffs had borrowed large sums of money from defendant bank and, because of the bank's conduct regarding these loans, attempted to recover for negligent infliction of emotional distress in an independent tort action and as direct victims. We affirmed the district court's grant of summary judgment stating that "[n]egligent infliction of emotional distress is a narrowly-defined tort in Montana," citing Versland and its bystander rule. Shiplet, 762 P.2d at 247. We stated that the body of the count and subsequent argument by the plaintiffs used language from Johnson, which was a parasitic damages case, not a case which addressed negligent infliction of emotional distress as a separate cause of action. We held that because we were affirming the district court's grant of summary judgment on all counts, we would not reach any damages issues.

In Niles v. Big Sky Eyewear (1989), 236 Mont. 455, 771 P.2d 114, Niles pled negligent infliction of emotional distress as a cause of action. We approved of this claim, citing Johnson, and stating that "[w]here there is evidence of substantial invasion of a legally protected interest which causes a significant impact upon the person of the plaintiff, emotional distress is compensable without showing of physical or mental injury." Niles, 771 P.2d at 119. We reviewed evidence from the plaintiff, her husband and a

26

clinical psychologist, who all testified that Niles had suffered emotional distress from being falsely accused of a crime. We held that the District Court did not err in denying the defendant's motions on the cause of action for negligent infliction of emotional distress.

Chronologically, the last case we review is Lence v. Hagadone Inv. Co. (1993), 258 Mont. 433, 853 P.2d 1230. Lence brought an action for damages arising from "libel, false light invasion of privacy, intentional and negligent infliction of emotional distress, and negligence" and the District Court entered summary judgment in favor of the defendant Inter Lake Publishing Company. We reiterated in Lence that in order to recover damages for infliction of emotional distress, "[t]he victim must show that the defendant's tortious conduct resulted either in physical or mental injury or in 'a substantial invasion of a legally protected interest,' and that it 'caused a significant impact,' including emotional distress 'so severe that no reasonable person could be expected to endure it.'" Lence 853 P.2d at 1237. We further stated that:

> Even if Lence could legitimately plead emotional distress, the Daily Inter Lake articles would have had to be more than merely hurtful or offensive; they would have had to be "so outrageous as to go beyond all possible bounds of decency." The newspaper's truthful publication that Semenza had lodged a complaint with the Commission, and its report of the building code dispute, hardly constitute outrageous conduct that goes beyond all possible bounds of decency.
> In the past we have characterized emotional distress as an element of damages rather than a distinct cause of action. Even if considered only for the purpose of establishing damages, however, Lence's deposition testimony demonstrates the absence of any genuine issue

27

of material fact concerning the severity of his alleged emotional distress.

Lence, 853 P.2d at 1238.   (Citations omitted.)

As is readily apparent, the case law demonstrates that negligent infliction of emotional distress as an independent tort action is a thorny issue with which this Court has struggled. The cases also illustrate the difficulties involved in developing a cohesive approach to determining whether a given factual situation should give rise to recovery for emotional distress, and the necessity to create artificial exceptions to avoid the harsh general rule.

Clearly, the traditional approach to the tort of emotional distress has proven, at best, cumbersome. However, other courts have addressed problems with the general rule and exceptions carved from the rule, and their decisions provide guidance for our further examination and clarification of this issue. Molien v. Kaiser Foundation Hospitals (Cal. 1980), 616 P.2d 813, 819, places the quandary surrounding the tort of emotional distress in perspective by stating that "[a]lthough we recognize a need to guard against fraudulent claims, we are not persuaded that the presently existing artificial lines of demarcation are the only appropriate means of attaining this goal." Moreover, in Rodriques, cited above, the Hawaii Supreme Court addressed one of the major policy conundrums at issue in the emotional distress debate by concluding that any concern over the ability of courts to recognize the genuineness of claims could be dispensed with by requiring that only severe mental distress be compensated. The Rodrisues court stated that:

28

> [c]ourts which have administered claims of mental
> distress incident to an independent cause of action are
> just as competent to administer such claims when they are
> raised as an independent ground for damages. In judging
> the genuineness of a claim of mental distress, courts and
> juries may look to "the quality and genuineness of proof
> and rely to an extent on the contemporary sophistication
> of the medical profession and the ability of the court
> and jury to weed out dishonest claims."

Rodriques, 472 P.2d at 519-20. (Citation omitted.)

The Rodriques court also addressed concern about the issue of unlimited liability of defendants by stating that concerns over the significance of the mental distress can be considered by the jury which can apply a "standard of serious mental distress based upon the reaction of 'the reasonable man."' Rodrisues, 472 P.2d at 520. The court concluded that serious mental distress could be found "where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Rodriques, 472 P.2d at 520.

Finally, having dispensed with the policy arguments which have served as the major impediments to recovery for emotional distress and having established the parameters for the recognition of emotional distress as an independent tort action, the court stated:

> [h]aving established these standards, we do not find
> the considerations which favor limiting the defendant's
> liability to the exclusion of the plaintiff's claim of
> decisive weight. Furthermore, we are faced with a
> multiplication of psychic stimuli as "society becomes
> more complex and people are crowded together" and with
> increasing widespread knowledge of the debilitating
> effect mental distress may have on an individual's
> capacity to carry on the functions of life. The force
> which compels recognition of an element of damages, once
> parasitic, as an independent basis of liability is social
> change. It can no longer be said that the advantages
> gained by the courts in administering claims of mental
> distress by reference to narrow categories outweigh the

29

burden thereby imposed on the plaintiff.  We recognize
that the interest in freedom from negligent infliction of
serious mental distress is entitled to independent legal
protection.

Rodriques, 472 P.2d at 520.    (Citation omitted.)

The Rodriques court stated that it would rely upon genera

tort principles to determine whether a defendant was liable to the

plaintiff in particular cases.   "Thus a further limitation on the

right of recovery, as in all negligence cases, is that the

defendant's obligation to refrain from particular conduct is owed

only to those who are foreseeably endangered by the conduct and

only with respect to those risks or hazards whose likelihood made

the conduct unreasonably dangerous."   Rodriques, 472 P.2d at 521.

Based upon the logic and analysis in Rodriques, Molien, the

Restatement (Second) of Torts, § 46, comment j, which is discussed

later,  and the state of our prior case law, we conclude that it is

appropriate to clarify the existing law on negligent infliction of

emotional distress and to delineate a better approach to such

claims.   We recognize that negligent infliction of emotional

distress as an independent tort action under the narrow Versland

analysis is archaic and does not fully address all plaintiffs who

are deserving of relief.   Therefore, we adopt the following

standard for determining whether a plaintiff has demonstrated a

cause of action for the negligent infliction of emotional distress.

A cause of action for negligent infliction of emotional distress

will arise under circumstances where serious or severe emotional

distress to the plaintiff was the reasonably foreseeable

consequence of the defendant's negligent act or omission.

30

Concern over a floodgate of claims for emotional distress, particularly fraudulent claims, is alleviated by the necessity to prove that the emotional distress suffered is severe or serious. Rodriques, 472 P.2d at 519-20. Concern over seeming unlimited liability for defendants is alleviated by the necessity of demonstrating that plaintiff's serious or severe emotional distress was the reasonably foreseeable consequence of defendant's negligent act or omission. Rodriques, 472 P.2d at 520-21.

Furthermore, the Restatement (Second) of Torts provides assistance in delineating the respective roles of the court and the jury in deciding emotional distress cases. "It is for the court to determine whether on the evidence severe [serious] emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed." Restatement (Second) of Torts, § 46, comment j at 78.

The requirement that the emotional distress suffered as a result of the defendant's conduct be "serious" or "severe" ensures that only genuine claims will be compensated. We conclude that a jury is capable of determining whether the emotional distress claimed to have been sustained is "serious" or "severe." As stated in Molien, citing Rodriques:

> "In cases other than where proof of mental distress is of a medically significant nature, [citations] the general standard of proof required to support a claim of mental distress is some guarantee of genuineness in the circumstances of the case. [Citation. ]" (472 P.2d at p. 520.). This standard is not as difficult to apply as it may seem in the abstract. As Justice Traynor explained in this court's unanimous opinion in State Rubbish Etc. Assn. v. Siliznoff, supra, 38 Cal 2d at page 338, 240 P.2d 282, the jurors are best situated to determine

31

whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience. In addition, there will doubtless be circumstances in which the alleged emotional injury is susceptible of objective ascertainment by expert medical testimony.

Molien, 616 P.2d at 821. (Citation omitted.)

Moreover, in Versland, we noted that with "today's more advanced state of medical science, technology and testing techniques," evidence of physical injury was not necessary to adequately determine whether a party had suffered emotional distress. Versland, 671 P.2d at 588. There is simply no justification for maintaining the traditional rule that emotional distress is not recoverable when claimed as an independent cause of action; the concerns underlying maintaining the traditional rule no longer weigh heavily enough to merit its continuation.

Furthermore, because we have concluded that the plaintiff must prove that the emotional distress suffered is "serious" or "severe" in order to warrant recovery on the claim, we also conclude that it is appropriate to define "serious" or "severe" emotional distress by employing the Restatement (Second) of Torts definition of severe or serious emotional distress. (We note that, although the Restatement definition addressed the definition of serious emotional distress in the context of the tort of intentional infliction of emotional distress, we conclude that it is also appropriate to use that same definition in connection with negligent infliction of emotional distress.) The Restatement (Second) of Torts, § 46, comment j at 77-78 defines "serious" emotional distress as:

32

Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. Severe distress must be proved.

The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge.

We conclude that the above test comports with well reasoned authority from other jurisdictions as well as the gradual evolution of Montana case law on the issue of negligent infliction of emotional distress. We hold that an independent cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent act or omission, and, as indicated above, we will employ the definition of severe or serious emotional distress from the Restatement (Second) of Torts, § 46, comment j at 77-78.

With respect to the District Court's order granting summary judgment for Dighans in the instant case, while it is unclear as to the precise legal basis for the court's decision, it appears that the court grounded its decision on Versland. Even absent our adoption of the new test discussed above, granting summary judgment

33

on the issue of negligent infliction of emotional distress in this case on the basis of Versland is error as a matter of law. The decisions of this Court involving negligent infliction of emotional distress handed down since Versland was decided, while not entirely consistent, at the very least, nevertheless, demonstrate a development of the law beyond the holding of that case as well as this Court's willingness to recognize negligent infliction of emotional distress in a broader context. Accordingly, we hold that, the District Court erred in granting Dighans' motion for summary judgment on the issue of negligent infliction of emotional distress, and we remand for further proceedings consistent with the new standard enunciated above.

III. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS - COUNT III

Sacco also contends that this Court has been willing to recognize a claim of intentional infliction of emotional distress so long as the "tortious conduct complained of resulted in a substantial invasion of a legally protected interest and caused a significant impact upon the person of the plaintiff," citing Frigon v. Morrison-Maierle, Inc. (1988), 233 Mont. 113, 760 P.2d 57. HCIP argues that Sacco fails to allege conduct so outrageous that it would justify a claim for intentional infliction of emotional distress nor did she allege damages "of any consequence." Dighans asserts that "[g]iven this Court's prior treatment of intentional infliction of emotional distress, which is a tort as opposed to an element of damages, the trial court's ruling was appropriate. The Court has not made it clear whether it is or is not recognized as

34

a legitimate cause of action. . . ."

Although we have not yet recognized a factual situation which would give rise to an action for intentional infliction of emotional distress under the traditional analysis of the tort, we tacitly approved intentional infliction of emotional distress pled as a separate cause of action in Foster v. Albertsons, Inc. (1992), 254 Mont. 117, 835 P.2d 720, wherein we stated:

> In Doohan v. Bigfork School Dist. No. 38 (1991), 247 Mont. 125, 805 P.2d 1354, we stated that we have not rejected the validity of the tort of intentional infliction of emotional distress as a separate cause of action. Rather, we simply have not addressed a factual situation that would give rise to liability for the tort under the "extreme and outrageous conduct" standard set forth in § 46 of the Restatement (Second) of Torts. Doohan, 247 Mont. at 138, 805 P.2d at 1362. Comment "d" to § 46 explains that the nature of the conduct which gives rise to liability for the tort is extreme and outrageous conduct going "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." We further stated in Doohan that whether a plaintiff has introduced sufficient evidence to support a prima facie case for intentional infliction of emotional distress which would survive a motion for a directed verdict is a question of law. Doohan, 247 Mont. at 142, 805 P.2d at 1365.
> In light of Doohan, it is clear that the District Court erred in concluding that the appellant's intentional infliction of emotional distress claim was subject to a directed verdict solely on the basis that it was brought as a separate cause of action. The parties had no opportunity to argue whether, under the legal standard set forth in Doohan, the evidence established the threshold level of conduct necessary to survive a motion for a directed verdict. We conclude that it is necessary to remand for such further proceedings on the intentional infliction of emotional distress claim as may be appropriate based on the evidence presented at a new trial in this cause.

Foster, 835 P.2d at 728

Fairly read, Frigon, Doohan and Foster stand for the proposition that intentional infliction of emotional distress is

35

recognized and <u>can</u> be pled as a separate cause of action in the courts of Montana. It is the trial court's duty to determine "whether a plaintiff has introduced sufficient evidence to support a prima facie case for intentional infliction of emotional distress. . ." <u>Doohan</u>, 805 P.2d at 1365. (Citation omitted.) It is then for the jury to determine whether, based upon the evidence presented, the tort of emotional distress was in fact committed. Restatement (Second) of Torts, § 46, comment j at 78.

However, in light of our adoption of a new standard for negligent infliction of emotional distress, we determine that the traditional approach to the tort of intentional infliction of emotional distress does not harmonize with our holding concerning negligent infliction of emotional distress. While we recognize intentional infliction of emotional distress as an independent cause of action, we also conclude that a different standard is necessary to determine whether a cause of action for intentional infliction of emotional distress exists. It makes little sense to allow defendant's negligence to give rise to a cause of action for negligent infliction of emotional distress where plaintiff's serious or severe emotional distress was the reasonably foreseeable consequence of the defendant's negligent act or omission, but to require, for intentional conduct, that the defendant's conduct be "extreme and outrageous conduct going 'beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" <u>Foster</u>, 835 P.2d at 728. In essence, to adopt our new test for negligent infliction of

36

emotional distress and still adhere to the traditional test for intentional infliction of emotional distress which requires "outrageous" conduct, would put this Court in the untenable position of requiring a higher standard of proof by plaintiffs when intentional infliction of emotional distress is pled than when a plaintiff pleads negligent infliction of emotional distress.

Accordingly, we conclude that the better approach to intentional infliction of emotional distress as an independent cause of action, is to require that the same basic elements be proven in an action for intentional infliction of emotional distress as in a cause of action for negligent infliction of emotional distress - that an independent cause of action for intentional infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's intentional act or omission. Again, the requirement that the emotional distress suffered be serious or severe, as we have already defined those terms, alleviates any concern over a floodgate of claims, particularly fraudulent claims. Also, the requirement that a claim of intentional infliction of emotional distress will arise only under circumstances where plaintiff's serious or severe emotional distress was the reasonably foreseeable consequence of the defendant's intentional act or omission alleviates the concern that defendants will be exposed to unlimited liability.

We find support for our decision that the same elements apply

to the independent cause of action of emotional distress, whether negligent or intentional, in Johnson, cited above. In Johnson, we stated:

> courts generally allow damages for embarrassment, humiliation and other mental distress, absent injury, where defendant's conduct is intentional or outrageous. To deny recovery in this case would focus upon defendant's culpability which is more properly considered when addressing the subject of punitive damages.
> .
> "Damages for emotional distress are compensatory, not punitive. Thus, the quality of the conduct is per se irrelevant, because negligently caused damage may be as disturbing as that caused by a defendant intentionally . the relevance of the quality of the conduct is in its effect on the victim."
> Therefore, whether tortfeasor's conduct is "extreme and outrageous" is not controlling and fails to provide a useful measure by which to evaluate compensable "emotional distress."

Johnson, 686 P.2d at 212-13. (Citation omitted.) We reiterate that rule here: damages for emotional distress are compensatory and, therefore, the focus should be on the reasonable foreseeability that plaintiff's serious or severe emotional distress was the consequence of the defendant's act or omission.

The defendant's culpability for intentionally inflicting emotional distress is "more properly considered when addressing the subject of punitive damages." Johnson, 686 P.2d at 213. See also; Miller v. Watkins (1982), 200 Mont. 455, 468, 653 P.2d 126, 132. ("Punitive or exemplary damages are allowed where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, for the sake of example and by way of punishing the defendant. Exemplary damages shall be used when the defendant clearly shows that he is deserving of such special treatment and punishment.")

38

(Citation omitted.) We conclude that an award of punitive damages is the proper method of addressing the culpability and intentional nature of the defendant's conduct in an intentional infliction of emotional distress case.

Here, the District Court concluded that this Court has not yet recognized intentional infliction of emotional distress as a separate cause of action and dismissed Sacco's **claim.** Therefore, no analysis was undertaken to determine whether sufficient evidence had been produced to support a prima facie case of intentional infliction of **emotional** distress. The District Court erred, and we remand this cause of action for a determination as to whether there is sufficient evidence to present this issue to the jury under the test hereinabove adopted. We hold that the District Court erred in granting **summary** judgment to all defendants on the issue of intentional infliction of emotional distress and we remand for further proceedings.

Summary **-** Independent Cause of Action for Emotional Distress

Summarizing: An independent cause of action for infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission. The difference between the negligent and intentional versions of the cause of action lies, not in the elements of the tort, but in the nature and culpability of the defendant's conduct. That being the case, when a cause of action for <u>intentional</u> infliction of emotional distress is pled, the

**39**

plaintiff may request relief in the form of punitive damages, per § 27-1-220, MCA, to address the culpability of the defendant's conduct. Serious or severe emotional distress to the plaintiff which was the reasonably foreseeable consequence of defendant's negligent or intentional act or omission will be addressed in both causes of action, as stated above, through a prayer for relief in the form of compensatory damages. Serious or severe emotional distress is defined according to the Restatement (Second) of Torts, § 46, comment j at 77-78. Finally, it is for the court to determine whether on the evidence severe or serious emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

Our prior cases dealing with independent causes of action involving negligent or intentional infliction of emotional distress, to the extent inconsistent with this opinion, are overruled.

## IV. DEFAMATION - COUNT II

Sacco asserts that the District Court erred when it granted HCIP and Sorlies' motion for summary judgment on Count II, which alleges that the defendants "defamed her by falsely reporting to Defendant Dighans that Ms. Sacco had committed a crime by stealing negatives from HCIP." HCIP counters that the District Court ruled that Sorlies' comments to Dighans and Schreiber were "absolutely privileged." They further argue that comments by Sorlies to Sacco's employer should not be considered by this Court because the cause of action for these comments was dismissed when the District

40

Court granted Sacco's motion for summary judgment.

We agree that the subissue of Sorlies' comments to Sacco's employer is not before the Court at this time. Sacco filed a motion for summary judgment on the limited subissue of alleged defamatory comments by Glenn Sorlie to Sacco's employer in order to dispose of all issues and appeal her case. The Sorlies' comments to Dighans and Schreiber, the city attorney, are, however, at issue in the instant case. We will discuss these two categories of comments separately.

Section 27-1-804, MCA, governs whether a communication is privileged. The statute provides:

> What communications are privileged. A privileged publication is one made:
> (1) in the proper discharge of an official duty;
> (2) in any legislative or judicial proceeding or in any other official proceeding authorized by law;
> (3) in a communication without malice to a person interested therein by one who is also interested or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent or who is requested by the person interested to give the information;
> (4) by a fair and true report without malice of a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

Sacco contends that the Sorlies falsely informed Dighans that she had committed a crime by stealing photographs and proof sheets. These statements are alleged to have been communicated to Dighans prior to Sacco's arrest, and in fact, formed the basis for her arrest. Sacco states that because no legislative or judicial proceedings were under way when the alleged statements were made, the privilege afforded by § 27-1-804, MCA, was not available to the Sorlies. We agree.

41

Section 27-1-804(2), MCA, states that a privileged publication is one made "in any legislative or judicial proceeding or in any other official proceeding authorized by law. ." Clearly, a report by a citizen to the police is neither a legislative nor a judicial proceeding. The question then becomes whether the report is an official proceeding authorized by law. In this jurisdiction we answer that question in the negative and find support for our conclusion in the Restatement (Second) of Torts.

Section 611 of the Restatement (Second) of Torts involves Reporting of Official Proceedings or Public Meetings. Comment h of that section provides as follows:

> An arrest by an officer is an official action, and a report of the fact of the arrest or of the charge of crime made by the officer in making or returning the arrest is therefore within the conditional privilege covered by this Section. On the other hand statements made by the police or by the complainant or other witnesses or by the prosecuting attorney as to the facts of the case or the evidence expected to be given are not yet part of the judicial proceeding or of the arrest itself and are not privileged under this Section.

Section 611, comment h at 301. Although we are not concerned here with a report of an official proceeding or public meeting, this section does provide parameters for deciding whether a report to the police is an official proceeding. We agree that a report to the police by a citizen is not an official proceeding. Moreover, even though Shors v. Branch (1986), 221 Mont. 390, 720 P.2d 239, involved interpreting § 27-1-804(1), MCA, not subsection (2) which is at issue here, we find its conclusion that unsolicited complaints to the police are not privileged under § 27-1-804, MCA, to be further support for our conclusion. See also; Niles v. Big

42

Sky Eyewear (1989), 236 Mont. 455, 771 P.2d 114.

Therefore, we conclude that the Sorlies' statements to Dighans are not privileged and Sacco's cause of action against the Sorlies and HCIP for defamation concerning statements made to Dighans prior to arrest may stand. We hold that the District Court erred in granting summary judgment on this subissue of Sacco's claim for defamation.

Sacco also contends that the Sorlies' statements to City Attorney Schreiber were defamatory. These statements were made after Sacco had been arrested on December 31, 1990, and had pled not guilty on January 7, 1991. The complaint states that the Sorlies, on January 30, 1991, "supplied additional false and misleading information to Belgrade City Attorney William Schreiber." Such statements fall under § 588 of the Restatement (Second) of Torts which addresses statements by witnesses in judicial proceedings and provides:

> A witness is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding or as a part of a judicial proceeding in which he is testifying, if it has some relation to the proceeding.

Section 588 at 250. Sorlies' statements to the City Attorney are "communications preliminary to a proposed judicial proceeding" under Restatement (Second) of Torts, § 588 at 250. However, comment e of § 588 states that "[a]s to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is actually contemplated in good faith and under

43

serious consideration by the witness or a possible party to the proceeding." Section 588, comment e at 251. (Emphasis added.)

Sacco has alleged that the statements made by the Sorlies were false and defamatory. She alleges that the allegations brought by the Sorlies which formed the basis for the criminal action against her for the theft of the photos and proof sheets were not made in good faith. Therefore, there is a question of fact as to whether the proceeding was contemplated in good faith by the Sorlies. This issue of fact should be determined by the jury. If the jury does determine that the allegations brought by the Sorlies which resulted in the criminal charges against Sacco were contemplated in good faith and under serious consideration, the communications between the Sorlies and City Attorney Schreiber are absolutely privileged. If the jury determines that the allegations brought by the Sorlies which resulted in the criminal charges against Sacco were not contemplated in good faith and under serious consideration, the communications are not privileged and the jury must then determine whether the alleged statements were defamatory. We hold that the District Court erred in granting summary judgment on this subissue of the claim of defamation.

## V. MALICIOUS PROSECUTION - COUNT I

Finally, Sacco contends that the District Court erred in granting summary judgment on the issue of malicious prosecution as to all defendants. She argues that the District Court erroneously concluded that she did not prove the fifth element for a cause of action for malicious prosecution. The defendants argue that a

44

motion to dismiss on a statute of limitations grounds is not a termination in Sacco's favor; "[i]t has no reflection on her innocence or guilt." Thus, defendants assert that Sacco cannot prove the fifth element of malicious prosecution and, therefore, Sacco's claim cannot stand

In order to successfully bring an action for malicious prosecution, the following six elements must be proven:

> (1) a judicial proceeding commenced and prosecuted against the plaintiff;
> (2) the defendant's responsibility for litigating, prosecuting, or continuing the proceeding;
> (3) lack of probable cause for the defendant's acts;
> (4) that the defendant was actuated by malice;
> (5) that the proceeding terminated in favor of the plaintiff; and
> (6) that the plaintiff suffered damages.

Davis v. Sheriff (1988), 234 Mont. 126, 130, 762 P.2d 221, 224.

In the instant case, three of the above elements were discussed or referenced by the District Court in its grant of summary judgment. The other three elements of a cause of action for malicious prosecution were not addressed. The District Court concluded that probable cause did exist for Dighans' application for the arrest warrant and for Sacco's subsequent arrest. On that basis the District Court, referencing Dighans' memorandum supporting his supplemental motion for summary judgment, concluded that Sacco could not satisfy the third element required for a cause of action for malicious prosecution.

The District Court also determined that there was a question of fact as to element 2 but that the court's conclusion with respect to element 5 was dispositive of the summary judgment

45

question. The District Court determined that the dismissal of the theft charges against Sacco because of the statute of limitations bar was not a termination in favor of the plaintiff and therefore, since all six elements could not be satisfied, Sacco's claim on this issue must fail. We disagree. We conclude that element 5 should be resolved in favor of Sacco.

Element 5 must be proven by the plaintiff in an action for malicious prosecution and concerns whether the proceeding was terminated in her favor. In the instant case, the original complaint against Sacco stated that she committed the "offense of theft of photo negatives/proof sheets between Oct. 19, 1989 and 28 June 1990." The Notice to Appear and Complaint was dated November 5, 1990. On January 25, 1991, the charge was amended to delete the statement "commit the offense of theft of photo/proof sheets between October 19, 1989 and 28 June 1990 from High Country Independent Press," and the following statement was added - "Commit the offense of theft of photograph negatives from the High Country Independent Press." After the charge was amended, any dates for the commission of the offense were deleted.

Without explaining his rationale, the Belgrade City Court Judge simply concluded that the alleged theft would have had to occur prior to or on October 19, 1989, and therefore, because the prosecution had not been commenced within one year, the charge was barred by the statute of limitations. Accordingly, Sacco's motion to dismiss the charge of theft was granted on June 24, 1991.

Sacco cites Miller v. Watkins (1982), 200 Mont. 455, 653 P.2d

126, in her argument that the termination of the proceedings against her were in her favor. In _Miller_, Watkins brought a counterclaim against Miller for malicious prosecution. Miller had approached brand inspectors contending that Watkins had stolen horses from him and the brand inspectors approached the county attorneys in Musselshell and Fergus counties with this information, resulting in charges of horse theft being filed against Watkins. The charges were ultimately dismissed with prejudice for lack of a speedy trial.

In deciding _Miller_, we cited Lackner v. LaCroix (1980), 25 Cal.3d 747, 159 Cal.Rptr. 693, 635, 602 P.2d 333, 395, for the proposition that:

> "It is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits. However, termination must _reflect_ on the merits of the underlying action...A dismissal for failure to prosecute . . does reflect on the merits of the action. . The reflection arises from that natural assumption that one does not simply abandon a meritorious action once instituted." (Underscoring added.)

_Miller_, 653 P.2d at 130. We agreed with the California Court that a dismissal for lack of speedy trial reflected on the merits and could be considered a termination in favor of Watkins. An analogous situation exists in the instant case.

Although we disagree with the _Lackner_ court's ultimate conclusion that dismissal because of the bar of the statute of limitations does not reflect on the merits, we agree with the rationale of that case wherein the court stated:

> "In some instances the manner of termination reflects the opinion of the court that the action lacks merit, as

47

where the criminal proceedings are dismissed for lack of sufficient evidence of guilt following a preliminary hearing. [Citation omitted.] In others, the termination reflects the opinion of the prosecuting party that, if pursued, the action would result in a decision in favor of the defendant, as where the district attorney seeks dismissal of the prosecution of a criminal action for lack of evidence [citations omitted] or where the plaintiff in a civil proceeding voluntarily dismisses the action [citations omitted]"

Lackner, 602 P.2d at 394-95.    (Citations omitted.)

We agree that certain terminations of proceedings reflect on the merits of the underlying action, and we conclude that, in the instant case, the dismissal of the theft charge against Sacco does reflect on the merits.  The original complaint contained dates for the alleged commission of the offense of theft but the amended complaint deleted the dates because, according  to the City Attorney, "[w]e couldn't prove that they were actually taken during October 19, 1989, and June 28, 1990."   The amendment to the complaint to delete the actual dates for the commission of the offense brought the action within the bar of the statute of limitations and ultimately resulted in the dismissal of the charge. (The deletion of the dates on the complaint meant that the only conceivable time period in which any person could have taken the photographs and proof sheets was on October 19, 1989, or before that date.   Therefore, because the complaint was not filed until November 5, 1990, the one year time period for the statute of limitations for this offense had expired.)

Just as in Miller, we operate under the "natural assumption that one does not simply abandon a meritorious action once instituted." Miller, 653 P.2d at 130. Moreover, there is no logic

48

in the contention that a dismissal for lack of speedy trial reflects on the merits of a case but that a dismissal because of the bar of the statute of limitations does not. In either case, "one does not simply abandon a meritorious action once instituted." Miller, 653 P.2d at 130. If the original allegations were provable in the first place, the case would have been actively prosecuted within the time limitations set by the statute of limitations. The fact that the original charges could not be proven and had to be amended, with the result that the offense alleged in the amended complaint then fell outside the statute of **limitations** and was dismissed reflects on the merits of the original complaint.

Accordingly, we conclude that the termination was in Sacco's favor and we hold that the District Court erred when it determined that Sacco could not prove the fifth element, which conclusion formed the basis for the court's granting summary judgment on the issue of malicious prosecution.

We note that defendants HCIP and Sorlies concede that there is a genuine issue of material fact concerning the second element to be proven in a case of malicious prosecution--the defendant's responsibility for litigating, prosecuting, or continuing the proceeding. Therefore, this element **must** be addressed on remand as must all other elements.

Moreover, because of our decision on Issue I, the third element, lack of probable cause for the defendant's acts, must also be addressed on remand. Again, we hold that the District Court erred when it granted summary judgment to all defendants on the

**49**

issue of malicious prosecution.

REVERSED AND REMANDED for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices