**Morey R. RAY, Plaintiff,**

v.

**WASHINGTON NATIONAL INSURANCE COMPANY, Defendant.**

No. CV–97–148–GF–PGH.

United States District Court,
D. Montana,
Great Falls Division.

April 21, 1999.

Torger S. Oaas, Oaas Law Office, Lewistown, MT, for Morey R. Ray, plaintiffs.

Dan L. Spoon, Robert T. Bell, Reep, Spoon & Gordon, PC, Missoula, MT, for Washington National Insurance Company, defendants.

### MEMORANDUM AND ORDER

HATFIELD, Senior District Judge.

The present action has its genesis in a dispute between the plaintiff, Morey R. Ray ("Ray"), and his health insurance carrier, defendant Washington National Insurance Company ("Washington National"), concerning the delayed payment of certain claims for medical expenses submitted on behalf of Ray's newborn son, Morgan Ray. Ray seeks compensable and punitive damages based upon alleged violations of subsections (1), (4) and (5) of Montana's Unfair Trade Practices Act, Mont.Code Ann. §§ 33–18–201 *et seq.* Presently before the court are the following motions:

1. Ray's motion for partial summary judgment with respect to Washington National's liability under subsections (1) and (4) of Mont.Code Ann. § 33–18–201.

2. Ray's motion to compel Washington National to respond to Requests for Admission Nos. 1, 2, 3 and 4.

3. Ray's motion to compel Washington National to respond to Interrogatory No. 3.

4. Washington National's cross-motion for summary judgment challenging its liability under subsections (1), (4) and (5) of Mont.Code Ann. § 33–18–201.

5. Washington National's motion for partial summary judgment challenging Ray's entitlement to damages for emotional distress.

6. Washington National's motion for partial summary judgment challenging Ray's entitlement to punitive damages.

7. Washington National's *motion in limine* to exclude evidence of other claims or litigation against Washington National.

8. Washington National's *motion in limine* to exclude any reference, at trial, to an alleged violation of Mont.Code Ann. § 33–22–301 by Washington National.

9. Washington National's motion to compel Ray to respond to Interrogatories Nos. 6, 16 and 17, and Request for Production No. 9; and

10. Washington National's motion to strike certain trial exhibits and wit-

nesses identified by Ray pursuant to Fed.R.Civ.P 37(c)(1).

Having reviewed the record herein, together with the parties' briefs in support of their respective positions, the court is prepared to rule.

## BACKGROUND

On June 11, 1996, Ray's son, Morgan, was born. At the time of Morgan's birth, Ray was insured under a group health insurance policy issued by Washington National, more particularly described as Certificate No. 31901379. Ray had purchased the policy in 1990 from Central Insurance Agency, an insurance broker in Belgrade, Montana. Central Insurance Agency is a sub-agent of Robert P. Jam Agency in Billings, Montana, which is an agent of Washington National.

The Washington National insurance policy provided coverage for newborn children under Part 7, Section B, which provides, in pertinent part, as follows:

## PART 7 —COVERED PERSONS

### Section B —Newborn Child and Newborn Adopted Child

A child born to you while your insurance under the Policy is in force will automatically become a Covered Person from the moment of birth.

\*  \*  \*  \*  \*  \*

You must give us written notice of the birth of a child described above and pay any additional required premium within 31 days after the first premium payment due date following the child's birth.

\*  \*  \*  \*  \*  \*

If you do not meet the applicable requirements, the child will stop being a Covered Person at the end of that 31 day period.

Pursuant to Part 7, Section B, newborn children of an insured are automatically covered from the moment of birth until 31 days after the next premium payment is due. If the insured seeks coverage for the newborn after this period of automatic coverage, the insured must give Washington National notice, in writing, of its intention and pay any additional premium required for the child. The written notice must be provided to Washington National within the period of automatic coverage, i.e., within 31 days after the first premium due date following the child's birth.[1]

Ray paid premiums to Washington National on a quarterly basis with payments due in February, May, August and November of each year. Accordingly, if Ray wished to include Morgan as a covered person under the Washington National policy, he was required to give Washington National written notice by September 1, 1996, which he did. Washington National acknowledged receipt of the requisite notice on August 16, 1996.[2]

On December 6, 1996, Washington National advised Ray, by letter, that Ray's request for insurance coverage on Morgan had been reviewed. Enclosed with the letter was a "Change Amendment" which erroneously stated that Morgan was added as a covered person effective November 1, 1996. Sometime thereafter, Washington National issued a second "Change Amendment" which correctly stated that Morgan was a covered person effective June 11, 1996, the date of his birth.[3]

---

1. Part 7, Section B of the Washington National policy is consistent with the prescriptions of Mont.Code Ann. § 33–22–301, which provides, in pertinent part, as follows:
   **33–22–301. Coverage of newborn under disability policy.**
   (1) Each policy of disability insurance or certificate issued must contain a provision granting immediate accident and sickness coverage, from and after the moment of birth, to each newborn infant of any insured.
   
   \*  \*  \*  \*  \*  \*
   
   (4) The policy or contract may require notification of the birth of a child and payment of a required premium or subscription fee to be furnished to the insurer or nonprofit or indem-

nity corporation within 31 days of the birth in order to have coverage extend beyond 31 days.

2. See, Letter from Washington National to Morey Ray dated 8/16/96, attached to Ray's reply brief in support of his motion for partial summary judgment, as exhibit 6.

3. The second Change Amendment is not dated, and neither party informs the court of the date the second Change Amendment was provided to Ray. Moreover, neither party describes how Washington National learned of the error in the first Change Amendment.

At various times after Morgan's birth, claims for Morgan's medical expense were submitted to Washington National for payment.[4] A number of the claims were rejected. Between June 11, 1996 and November 1, 1996, Washington National refused to pay all submitted claims on the ground Ray failed to provide appropriate and timely notice of his intent to include Morgan as a covered person on the Washington National policy. On February 14, 1997, Washington National rejected claims for medical services rendered between October 21, 1996 and December 21, 1996, on the ground the services were rendered after coverage for Morgan had been terminated.[5] On October 10, 1997, Washington National rejected claims for medical services rendered between August 16, 1996 and September 11, 1996, on the ground the services were rendered prior to the date Morgan became a covered person.[6] For reasons undisclosed to the court, Ray dropped Morgan's coverage under the Washington National policy on January 10, 1997.

The present action was instituted on November 14, 1997. On or about that date, Washington National apparently realized that a number of the claims submitted on Morgan's behalf had been inappropriately rejected. Accordingly, Washington National agreed to reassess the previously submitted claims, and pay all covered medical expenses which were inappropriately rejected. Despite Washington National's efforts in this regard, Ray contends that some covered expenses remain unpaid today.[7] Ray seeks compensatory and punitive damages for Washington National's purported violations of subsections (1),(4) and (5) of Montana's Unfair Trade Practices Act, Mont.Code Ann. §§ 33–18–201 et seq.

## DISCUSSION

### A. Ray's Motion for Partial Summary Judgment

■ Ray's motion for partial summary judgment is limited to the alleged violations of subsections (1) and (4) of § 33–18–201.[8] An insured may pursue an independent cause of action against an insurer if the insurer violates subsections (1) or (4) of Mont.Code Ann. § 33–18–201. See Mont.Code Ann. § 33–18–242(1) (1997); Dees v. American Nat'l Fire Ins., Co., 260 Mont. 431, 861 P.2d 141, 146–47 (1993). Subsection (1) of § 33–18–201 prohibits an insurer from misrepresenting insurance policy provisions. Ray contends Washington National violated subsection (1) when it issued a Change Amendment that erroneously represented that coverage for Morgan began on November 1, 1996, rather than June 11, 1996. The court agrees.

The coverage commencement date described in the first Change Amendment is clearly contrary to the prescriptions of Part 7, Section B of the Washington National policy, which provides that coverage for newborn children automatically commences on the date the child was born.

■ Subsection (4) of § 33–18–201 prohibits an insurer from refusing to pay claims without conducting a reasonable investigation based upon all available information. Ray contends Washington National violated sub-

---

**4.** Based upon the record presented, the court is unable to determine the precise date the claims were submitted to Washington National.

**5.** See, Explanation of Benefits dated February 2, 1997, attached to Ray's reply brief in support of his motion for summary judgment, as exhibit 10.

**6.** See, Explanation of Benefits dated 10/1/97, attached to Ray's reply brief in support of his motion for partial summary judgment, as exhibit 9.

**7.** During his deposition on June 10, 1998, Ray stated the unpaid medical expenses total $209.00. In subsequent answers to discovery requests propounded by Washington National, Ray changed that figure to $565.00. Because

Ray's latter discovery response was unclear on how the figure of $565.00 was determined, Washington National filed an appropriate motion to compel. That motion, which is presently before the court, is addressed below.

**8.** Subsections (1) and (4) of Mont.Code Ann. § 33–18–201 provide as follows:

**33–18–201. Unfair claim settlement practices prohibited.**
No person may ... do any of the following:
(1) misrepresent pertinent facts or insurance policy provisions relating to coverages at issue;

\*      \*      \*      \*      \*      \*

(4) refuse to pay claims without conducting a reasonable investigation based upon all available information[.]

section (4) when it rejected numerous claims for medical expenses that were obviously covered under Washington National's policy. This argument is also well taken.

The determinative issue regarding a claim under subsection (4) is whether the insurer "had a reasonable basis in law or in fact for contesting the claim or the amount of the claim, which ever is in issue." *See*, Mont. Code Ann. § 33–18–242(5). In the present case, the court can conclude, as matter of law, that Washington National did not have a reasonable basis in law or fact for rejecting a number of the claims it received with respect to Morgan's medical care. First, the claims for medical services rendered between June 11, 1996, and September 1, 1996, were covered under the automatic coverage provision contained in Part 7, Section B of the policy, and could not be properly challenged on the ground Ray had failed to provide appropriate notice of his intent to include Morgan as a covered person under the policy. Second, the claims for medical services rendered between September 1, 1996, and January 10, 1997, should not have been challenged because Ray had previously provided timely notice of his intent to acquire coverage for Morgan. A reasonable investigation would have revealed these facts. Washington National has failed to present a persuasive argument to the contrary. Accordingly, Ray's motion for partial summary judgment is granted.[9]

### B. Washington National's Motion for Partial Summary Judgment *Challenging Ray's Entitlement to Damages for Emotional Distress*

Mont.Code Ann. § 33–18–242(4) specifically provides if an insured violates subsections (1) or (4) of Mont.Code Ann. § 33–18–201, the plaintiff is entitled to recover all damages proximately caused by the violation. Cognizant of this prescription, Ray claims that he is entitled to recover damages for the emotional distress he incurred when Washington National failed to promptly pay Morgan's medical expenses. Washington National retorts that any inconvenience incurred by Ray, as a consequence of the delayed payments, could not possibly support a claim for severe emotional distress.[10]

To prove a claim for infliction of emotional distress under Montana law, whether an independent claim or as an element of damages, a plaintiff must prove he has suffered "serious or severe" emotional distress that was the reasonably foreseeable consequence of the defendant's negligent or intentional act or omission. *See*, *Sacco v. High Country Independent Press*, 271 Mont. 209, 896 P.2d 411, 429 (1995). Emotional distress includes mental suffering, mental anguish, mental or nervous shock, and highly unpleasant reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. *Sacco*, 896 P.2d at 426. Emotional distress is serious or severe only if the "distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Id.* In determining the severity of the distress, the finder of fact should consider both the intensity and the duration of the distress. *Id.* Liability does not apply "where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor had knowledge." *Sacco*, 896 P.2d at 426.

In the present case, Ray states that Washington National's delay in paying the insurance claims caused him to be angry and frustrated, and contributed to fluctuations in his weight occurring over a period of one year. Although Ray characterized his anger as severe at times, he did not seek medical or psychological treatment for his distress.

---

9. In view of the court's ruling on Ray's motion for partial summary judgment, Washington National's motion for summary is accordingly denied.

10. Washington National also argues it is entitled to summary judgment to the extent Ray is attempting to advance an independent claim for emotional distress, because Mont.Code Ann.

§ 27–1–310 precludes an independent claim for emotional distress in an action premised upon a breach of contract. This argument may be summarily rejected because Ray's request for emotional distress damages is premised solely upon Washington National's violations of Montana's Unfair Trade Practices Act.

Based upon the record developed at this juncture, the court concludes that material issues of fact exist as to whether Ray incurred serious emotional distress. Accordingly, Washington National's motion for partial summary judgment is denied. Following Ray's case-in-chief at trial, the court will revisit this issue, upon an appropriate motion by Washington National.

### C. Washington National's Motion for Partial Summary Judgment *Challenging Ray's Entitlement to Punitive Damages*

Punitive damages may be awarded in an action for violation of subsections (1), (4) and (5) of § 33–18–201, if the requirements prescribed in Mont.Code Ann. § 27–1–221 are satisfied. *See* Mont.Code Ann. § 33–18–242(4). Section 27–1–221 permits an award of punitive damages when a defendant has been found guilty of actual fraud or actual malice. Section 27–1–221 defines "actual fraud" and "actual malice" as follows:

> (2) A defendant is guilty of actual malice if he has knowledge of facts or intentionally disregards facts that create a high probability of injury to the plaintiff and:
>
>> (a) deliberately proceeds to act in conscious or intentional disregard of the high probability of injury to the plaintiff; or
>>
>> (b) deliberately proceeds to act with indifference to the high probability of injury to the plaintiff.
>
> (3) A defendant is guilty of actual fraud if he:
>
>> (a) makes a representation with knowledge of its falsity; or
>>
>> (b) conceals a material fact with the purpose of depriving the plaintiff of property or legal rights or otherwise causing injury.

Mont.Code Ann. §§ 27–1–221(2),(3).

A plaintiff must prove all elements of a claim for punitive damages by "clear and convincing evidence," which is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence. It is more than a preponderance of evidence but less than beyond a reasonable doubt." *See*, Mont.Code Ann. § 27–1–221(5).

■ In the present case, Ray contends Washington National's initial refusal to pay Morgan's medical expenses was a deliberate attempt to deprive Ray of monies he was entitled to receive under the Washington National policy. Washington National, on the other hand, characterizes the delay in payment of Morgan's medical expenses as the product of confusion and honest mistakes. The court concludes that genuine issues of material fact exist as to whether Washington National acted with actual fraud or actual malice. Therefore, Washington National's motion for partial summary judgment challenging Ray's entitlement to punitive damages is denied.

### D. *Motions to Compel*

#### 1. *Ray's Motion to Compel Washington National to Respond to Interrogatory No. 3*

On September 8, 1998, Ray filed a motion urging the court to compel Washington National to respond his Interrogatory No. 3, which requests Washington National to identify its net worth for years 1995, 1996 and 1997. The discovery request is obviously designed to obtain financial information which may be relevant in connection with a claim for punitive damages. Cognizant that Washington National had submitted a motion challenging Ray's entitlement to punitive damages, the court deemed it appropriate to hold Ray's motion to compel in abeyance, until the parties' cross-motions for summary judgment were resolved.

Having ruled on the parties' respective motions for summary, the court deems it appropriate to require the parties to complete the necessary briefing on Ray's motion to compel. Accordingly, Washington National shall have up to and including May 13, 1999, to submit a response brief in opposition to Ray's motion to compel. Ray shall have up to and including May 27, 1999, to submit a reply. Upon submission of the described briefs, the matter shall be deemed submitted for determination.

### 2. Ray's Motion to Compel Washington National to Respond to Requests for Admission Nos. 1, 2, 3 and 4

Ray's Requests for Admission Nos. 1, 2, 3 and 4 pertain to several documents which Ray stated were pages from Washington National's official Annual Statements on file with the Montana State Auditor's Office, for years 1995 and 1996. The referenced discovery requests directed Washington National to admit or deny: (1) that the documents were true and correct copies of pages from the annual statements; and (2) that the financial information contained on the documents was accurate. To assist Washington National in identifying the documents, Ray stated the pages from the 1995 annual statement were marked as exhibit 1 and the pages from the 1996 annual statement were marked as exhibit 2. Washington National responded to the discovery requests by denying the documents were true and correct copies. Ray contends the response was inappropriate.

The court concludes that Washington National's response was appropriate under the circumstances. None of the documents purporting to be pages from Washington National's Annual Statements contained exhibit markers, and many of the pertinent numbers located on the documents were partially obliterated. Accordingly, Ray's motion to compel is denied.

### 3. Washington National's Motion to Compel Ray to Respond to Interrogatories Nos. 6, 16 and 17, and Request For Production No. 9

Interrogatories Nos. 6, 16 and 17, and Request for Production No. 9, request that Ray identify each element of his damage claim and describe how each element of damages was calculated. Interrogatory No. 16 focuses specifically on Ray's statements during his deposition that certain medical expenses, totaling $209.00, remained unpaid by Washington National. In response to the discovery requests, Ray stated his claim for unpaid medical expenses had increased to $565.00. Ray failed to identify any documents that supported his revised damage claim, nor did he provide an explanation of how the new damage figure was calculated.

Washington National contends Ray's response was nonresponsive and insufficient.

Ray's responses to the referenced discovery requests was inappropriate. Ray shall provide a proper response to the discovery requests on or before May 5, 1999, which shall include (1) a description of each element of damages sought by him, (2) the precise amount of his claim for unpaid medical expenses, (3) a detailed explanation of how that amount was determined, and (4) a copy of all documents relating to the claim for unpaid medical expenses. If Ray fails to provide proper responses to the referenced discovery requests within the time prescribed herein, the court shall issue an appropriate order.

### E. Washington National's Motion in Limine to Exclude Evidence of any other Claims or Litigation Against Washington National, and Washington National's Motion to Strike Certain Witnesses and Exhibits

Washington National's motion *in limine*, and motion to strike are premised upon a Consent Order executed by Montana's State Auditor and Commissioner of Insurance and Washington National on February 6, 1998. The Consent Order pertains to a number of complaints by Montana citizens challenging Washington National claims handling practices. Some of the complaints challenge the timeliness of payments on covered claims, other complaints challenge Washington National's refusal to pay claims allegedly covered under health insurance policies.

The motion *in limine* seeks an order precluding Ray from offering any evidence of the claims or litigation against Washington National. The motion to strike seeks an order, pursuant to Fed.R.Civ.P. 37(c)(1), precluding Ray from offering the Consent Order as an exhibit at trial, or presenting testimony on the Consent Order through two witnesses identified, for the first time, in Ray's portion of the Proposed Pretrial Order. The witnesses, Russell Hill and Carol Ray, apparently worked for the Montana State Auditor's Office when the Consent Order was issued.

### (i) Proposed Witnesses Russell Hill and Carol Ray

■ On March 20, 1998, this court entered a scheduling order in this action, which set forth specific deadlines for, *inter alia,* the identification of fact witnesses and the completion of discovery. The court's scheduling order provided that fact witnesses were to be identified by June 23, 1998. That deadline was later changed to July 10, 1998, in response to a motion by Washington National.

Ray failed to disclose Russell Hill or Carol Ray as potential witnesses prior to July 10, 1998. The witnesses were first disclosed by Ray on December 16, 1998, approximately one month after discovery had closed. Because the disclosure of Mr. Hill and Ms. Ray was untimely, neither person shall be permitted to testify as a witness in Ray's case-in-chief. However, depending on how the evidence develops at trial, they may be permitted to testify as rebuttal witnesses. Because Washington National has not had an opportunity to conduct discovery with respect to Mr. Hill or Ms. Ray to explore their knowledge regarding other similar claims and litigation against Washington National, the court deems it appropriate to afford Washington National an opportunity to take their depositions. These depositions shall be completed on or before May 21, 1999.

### (ii) Consent Order

At the outset, the court notes the Consent Order should have been disclosed by both parties in their respective prediscovery disclosure statements, because it was relevant to matters at issue in this action. Neither party did.

■ In the present motion, Washington National contends Ray had an obligation to disclose the Consent Order in response to Washington's Interrogatories Nos. 5 and 7. Interrogatory No. 5 requested Ray to describe all documentary evidence he intended to offer as an exhibit at trial. Interrogatory No. 7 requested Ray to (1) identify any statute, regulation or ordinance that Washington National allegedly violated by mishandling the claims at issue in this matter, (2) identify any facts that relate to the violations, and (3) identify any persons with knowledge of the violations.

With respect to Interrogatory No. 5, the court notes that interrogatories which attempt to compel a party to identify its trial exhibits during discovery are discouraged, because the responding party has not fully discovered or evaluated his case at that juncture. The disclosure of trial exhibits usually occurs when the proposed pretrial order is filed. In any event, the court concludes that Ray's failure to list the Consent Order, as a potential trial exhibit, in response to Interrogatory No. 5, did not cause significant prejudice to Washington National because Washington National was aware of its existence, and Ray referred to it in his preliminary pretrial statement.

Ray's failure to identify the Consent Order in response to Interrogatory No. 7 is reasonable because the focus of that interrogatory is the identification of laws that were allegedly violated by Washington National, not the disclosure of other claims or litigation.

Therefore, the court concludes that Ray may use the Consent Order in his case-in-chief to properly impeach a witness or refresh the witness' recollection.

### F. Washington National's Motion in Limine to Exclude any Reference to an Alleged Violation of Mont.Code Ann. § 33–22–301 by Washington National

■ Washington National urges the court to preclude Ray from making any reference, at trial, to an alleged violation of Mont.Code Ann. § 33–22–301 by Washington National. Washington National contends that any reference to an alleged violation of § 33–22–301 at trial would be inappropriate because Ray has not asserted a claim under § 33–22–301, section 33–18–242 prohibits Ray from asserting a claim against Washington National based upon § 33–22–301, and a violation of § 33–22–301 has not occurred.

Mont.Code Ann. § 33–22–301 requires, among other things, that each policy of health insurance shall contain a provision for automatic coverage of newborns during the first 31 days after birth. It is undisputed

that the Washington National policy contained such a provision. Therefore, Washington National's motion *in limine* is granted to the extent it seeks to preclude any reference to a violation of § 33–22–301. However, the court's order does not preclude Ray from offering evidence of the existence of § 33–22–301, to the extent such evidence would be relevant to Ray's claims for compensatory and punitive damages under Mont.Code Ann. § 33–18–242(4).

## CONCLUSION

Therefore, for the reasons set forth herein,

IT IS ORDERED that:

1. Ray's motion for partial summary judgment with respect to Washington National's liability under subsections (1) and (4) of Mont.Code Ann. § 33–18–201 is GRANTED.

2. Ray's motion to compel Washington National to respond to Requests for Admission Nos. 1, 2, 3 and 4 is DENIED.

3. Briefing on Ray's motion to compel Washington National to respond to Interrogatory No. 3 shall be completed pursuant to the schedule described above.

4. Washington National's motion for summary judgment challenging its liability under subsections (1), (4) and (5) of Mont.Code Ann. § 33–18–201 is DENIED.

5. Washington National's motion for partial summary judgment challenging Ray's entitlement to damages for emotional distress is DENIED.

6. Washington National's motion for partial summary judgment challenging Ray's entitlement to punitive damages is DENIED.

7. Washington National's motion to strike certain trial exhibits and witnesses is GRANTED, in part, and DENIED, in part.

8. Washington National's motion *in limine* to exclude any reference, at trial, to any violation of Mont.Code Ann. § 33–22–301 by Washington National

is GRANTED, to the extent described above.

9. Washington National's motion to compel Ray to respond to Interrogatories Nos. 6, 16 and 17, and Request for Production No. 9 is GRANTED.

10. Washington National's motion *in limine* to exclude evidence of other claims or litigation against Washington National is GRANTED, in part, and DENIED, in part.