**DUBRAY LAND SERVICES, INC., and James Dubray, Plaintiffs,**

v.

**SCHRODER VENTURES U.S., Andrew Gaspar, Nicholas Somers, and W. Montague Yort, Mesa Communications Group, LLC, Mesa Holding Co., and John Does 1–10, Defendants.**

No. CV–05–130–BLG–CSO.

United States District Court, D. Montana, Billings Division.

May 17, 2007.

Herbert I. Pierce, III, Jeffery J. Oven, Christopher C. Stoneback, Crowley Haughey Hanson Toole & Dietrich, Billings, MT, for Plaintiffs.

Aaron Bloom, Daniel Abuhoff, Michael Schaper, DeBevoise & Plimpton, LLC, New York, NY, W. Anderson Forsythe, Moulton Bellingham Longo & Mather, Jeanne M. Bender, Michelle Millhollin Sullivan, Holland & Hart, Billings, MT, for Defendants.

## ORDER ADOPTING FINDINGS AND RECOMMENDATION

CEBULL, District Judge.

On April 10, 2007, United States Magistrate Judge Carolyn S. Ostby entered her Findings and Recommendation. Magistrate Judge Ostby recommends that Mesa Communications Group, LLC's Motion for Summary Judgment be granted.

Upon service of a magistrate judge's findings and recommendation, a party has 10 days to file written objections. 28 U.S.C. § 636(b)(1). In this matter, Plaintiffs filed objections on April 17, 2007. Defendant Mesa Communications Group, LLC responded to Plaintiffs' objections on April 27, 2007. Plaintiffs' objections are not well taken.

After a de novo review, the Court determines the Findings and Recommendation of Magistrate Judge Ostby are well grounded in law and fact and HEREBY ORDERS they be adopted in their entirety.

Montana law requires an entity to act affirmatively to become self-insured and there is no evidence in the record that Mesa took any affirmative step to establish itself as a self-insured entity. This Court agrees that the inescapable conclusion is that Mesa was not self-insured. Additionally, it is apparent that James DuBray's claims for intentional and negligent infliction of emotional distress necessarily fail because the stated bases for the DuBrays' emotional distress claims no longer exist.

Accordingly, **IT IS HEREBY OR-DERED** that Mesa Communication Group, LLC's Motion for Summary Judgment [doc. # 68] GRANTED.

The Clerk of Court shall notify the parties of the making of this Order.

## FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE ON MESA COMMUNICATION GROUP, LLC's MOTION FOR SUMMARY JUDGMENT

OSTBY, United States Magistrate Judge.

Plaintiffs DuBray Land Services, Inc., and James DuBray (hereafter the "DuBrays") instituted this action in Montana state court against Defendants for claims arising from a previous lawsuit in which DuBray Land Services, Inc., sued Mesa Communications Group, LLC. *See DuBray Land Services, Inc. v. Mesa Communications Group, LLC,* CV 01–123–BLG–RFC (*"DuBray I"*). In the underlying action, DuBray Land Services, Inc., recovered damages after a jury trial.

In the present case, the DuBrays claim that Defendants' participation in the management of *DuBray I* caused them damages. For their claims, the DuBrays allege abuse of process, bad faith, and intentional and negligent infliction of emo-

tional distress. They seek compensatory and punitive damages.

Now pending before the Court are the following motions:

1. Defendants SV Investment Partners LLC,[1] Andrew Gaspar, Nicholas Somers, W. Montague Yort, and Mesa Holding Co.'s (hereafter the "SVIP Defendants") Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b) (Court's Doc. No. 32);

2. The DuBrays' Motion to Compel Production of Personal Jurisdiction Information (Court's Doc. No. 65); and

3. Mesa Communications Group, LLC's Motion for Summary Judgment (Court's Doc. No. 68).

On April 6, 2007, the Court held oral argument on all pending motions. The Court addresses, by separate Order filed contemporaneously herewith, the SVIP Defendants' Motion to Dismiss and the DuBrays' Motion to Compel. With respect to Mesa Communications Group, LLC's Motion for Summary Judgment, the Court makes the following Findings and Recommendation.[2]

## I. PROCEDURAL BACKGROUND

On October 6, 2005, Defendant Mesa Communications Group, LLC (hereafter "Mesa"), removed this matter (Court's Doc. No. 1), invoking the Court's diversity jurisdiction.

On October 26, 2005, Mesa filed a Motion to Dismiss (Court's Doc. No. 6).

On March 31, 2006, Magistrate Judge Anderson filed Findings and Recommendations ("*3/31/06 Findings*") (Court's Doc.

No. 16) recommending that Mesa's motion be granted with respect to the DuBrays' claim for abuse of process, but denied to the extent that it sought dismissal of the DuBrays' claims for bad faith and infliction of emotional distress.

On May 12, 2006, Judge Cebull affirmed the recommendations, and entered an Order (Court's Doc. No. 28) dismissing the DuBray's claim against Mesa for abuse of process, but otherwise denying Mesa's motion.

On January 19, 2007, Mesa filed its motion for summary judgment. On March 5, 2007, the Dubrays filed their response brief, and on March 19, 2007, Mesa filed its reply brief.

On April 6, 2007, the Court conducted a hearing and heard oral argument on all pending motions. For the reasons stated herein, the Court makes the following Findings and Recommendation.

## II. DISCUSSION

### A. Mesa's Motion for Summary Judgment

#### 1. Summary Judgment Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is suffi-

---

**1.** SV Investment Partners LLC indicates in its submissions that it is incorrectly named Schroder Ventures U.S. in this action.

**2.** By Order filed January 19, 2007, United States District Judge Richard F. Cebull re-

ferred this case to the undersigned for all pretrial proceedings pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), including submission of proposed findings and recommendations. *See* Court's Doc. No. 67.

cient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548.

### 2. *Summary of Parties' Arguments*

With respect to the DuBrays' claim against it for bad faith, Mesa advances a three-prong argument for summary judgment. First, Mesa argues that Montana's Unfair Trade Practices Act ("UTPA") does not apply to it because it is not, and never has been, self-insured. *Mesa Communications Group, LLC's Brief in Support of its Motion for Summary Judgment* ("*Mesa's Opening Br.*") (Court's Doc. No. 69) *at 3–10.*

Second, Mesa argues that, even if it were subject to the UTPA, the underlying claim prompting the DuBrays' bad faith allegations initially arose during the course of *DuBray I.* Because conduct during a lawsuit cannot be used as evidence of bad faith, Mesa argues, it is entitled to summary judgment on the DuBrays' statutory bad faith claim. *Id. at 10–14.*

Third, Mesa argues that, even if the UTPA applied to it, and even if conduct during a lawsuit were admissible evidence of bad faith, no evidence exists that Mesa violated the UTPA as alleged. *Id. at 14–17.*

With respect to James DuBray's claims against it for intentional and negligent infliction of emotional distress, Mesa argues that the claims are premised on the DuBrays' bad faith claim. Dismissal of the bad faith claim, Mesa argues, necessarily will cause the infliction of emotional distress claims to fail. *Id. at 18.*

In response to Mesa's motion, the DuBrays first argue that Mesa is a self-insured entity. *DuBray Land Services, Inc. and James DuBray's Response Brief Opposing Mesa Communications Group, LLC's Motion for Summary Judgment* ("*DuBrays' Br.*") (Court's Doc. No. 76) *at 2–8.* They argue that Mesa is self-insured because it "retained the risk of loss" which is "the essence of self-insurance" and because it exhibits characteristics of a self-insured entity. *Id.* Thus, the DuBrays argue, because Mesa is a self-insured entity, the UTPA applies to it. *Id. at 10–13.*

Second, they argue that, as a self-insured entity subject to the UTPA, the entire course of Mesa's conduct with respect to the DuBray's contract claim is admissible to prove Mesa's bad faith. *Id. at 13–16.*

Third, the DuBrays argue, summary judgment is not appropriate because the issues of whether Mesa had a reasonable basis for denying DuBray Land Services, Inc.'s claim and of whether Mesa other-

wise acted in bad faith are questions for the trier of fact. *Id. at 16–18.*

Finally, with respect to James DuBray's claim for infliction of emotional distress, the DuBrays argue that the claim is an independent claim not premised on Mesa's alleged insurance bad faith claim. The DuBrays argue that "the claim is premised upon the panoply of negligent and intentional acts inflicted upon Mr. DuBray by Mesa that caused Mr. DuBray serious and severe emotional distress." *Id. at 18.*

### 3. Analysis

#### a. Bad Faith Claim

█ Judge Anderson noted, when he addressed Mesa's previously filed motion to dismiss, that "[t]he threshold question [with respect to the viability of the Du-Bray's bad faith claim] is whether Mesa was self-insured or simply uninsured." *3/31/06 Findings at 6.* This is the threshold question because the UTPA, under which the DuBrays bring their bad faith claim, applies to insurers, which include "person[s], firm[s], or corporation[s] utilizing self-insurance to pay claims made against them." Mont.Code. Ann. § 33–18–242(8) (2005).[3] Thus, if an entity is uninsured rather than "utilizing self-insurance," the entity is not subject to the provisions of the UTPA.

For the reasons that follow, the Court finds that Mesa is uninsured rather than "utilizing self-insurance." Consequently, the Court will recommend that Mesa's motion for summary judgment be granted with respect to the DuBrays' bad faith claim.

#### i. Montana Law Does Not Support the Argument that Mesa is Utilizing Self–Insurance

First, Montana law appears to require an entity to act affirmatively to become self-insured. The UTPA does not define "self-insurance." As Mesa notes, however, other Montana statutes do discuss the term and provide guidance as to its meaning. The Court may rely on other statutory provisions for guidance in determining the meaning of the words at issue herein. *See* Mont.Code Ann. § 1–2–107 ("Whenever the meaning of a word or phrase is defined in any part of this code, such definition is applicable to the same word or phrase wherever it occurs, except where a contrary intention plainly appears.").

Examples of the Montana Code's guidance with respect to the meaning of "self-insurance" include:

(1) Montana's Workers' Compensation Act, which provides that an employer can become self-insured by "furnishing satisfactory proof ... of solvency and financial ability to pay the compensation and benefits ... and to discharge all liabilities that are reasonably likely to be incurred during the fiscal year for which the election is effective." Mont.Code Ann. § 39–71–2101. Employers electing to proceed with self-insurance must "file proof of ... solvency...." Mont.Code Ann. § 39–71–2102;

(2) Montana's motor vehicles statutes, one of which provides that "any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued

---

**3.** All references to the Montana Code Annotated are to the 2005 edition unless otherwise indicated.

by the department...." Mont.Code Ann. § 61–6–143; and

(3) Montana's statutes governing government structure and administration, one of which provides that a political subdivision may use self-insurance provided it follows the guidelines contained in the law for doing so. Mont.Code Ann. § 61–6–143.

As Mesa argues, the common thread from these provisions of Montana law is that, for an entity to become self-insured, it must act affirmatively in some respect. As noted above, it must accomplish some act, such as: furnishing satisfactory proof of solvency and financial ability to pay; obtaining a certificate of self-insurance; or following statutory or regulatory guidelines in relying on self-insurance as a means of meeting its obligations. The Court is aware of no provision of Montana law, and the DuBrays have not pointed to any, that states that entities, merely by being uninsured, use "self-insurance to pay claims made against them."

Montana case law also suggests that entities must act affirmatively to be considered self-insured as that status is contemplated in the UTPA. *See, e.g., Trustees of Indiana Univ. v. Buxbaum,* 315 Mont. 210, 69 P.3d 663, 666 (2003) (noting that the district court, in the underlying action, found that a university was self-insured because its trustees resolved to make it so and executed documents to that effect); *Clarke v. Massey,* 271 Mont. 412, 897 P.2d 1085, 1088 (1995) (holding, in a workers compensation case, that an employer who failed either to elect to be self-insured or to be covered under another insurance plan, was "simply an uninsured employer" for purposes of the statute's attorneys' fees provision).

The DuBrays concede that Mesa had no "formalized program of self-insurance." *DuBrays' Br. at 8.* There is no evidence in the record that Mesa took any affirmative step to establish itself as a self-insured entity. On the contrary, Mesa has presented evidence, which the DuBrays have not refuted, that Mesa: (1) did not endeavor to employ self-insurance to cover any loss it suffered in *DuBray I* or against any other claims, *Mesa Communications Group, LLC's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment ("SUF") at ¶ 19;* (2) never applied for and was never issued any type of certificate of self-insurance, *id. at ¶ 20;* (3) did not adopt policies and procedures regarding any type of self-insurance plan, *id. at ¶ 21;* (4) did not create a claims-handling department, *id.;* (5) did not designate any of its employees as a claims examiner or adjuster, *id. at ¶ 22;* (6) did not have a fund for payment of claims, *id. at ¶ 23;* (7) did not establish a reserve for future losses, *id.;* (8) did not create on its balance sheet a liability entry that would represent an accrual for future losses or otherwise account for any type of self-insurance, *id. at ¶ 24;* and (9) did not select a self-insured retention limit, establish a loss limit fund, or carry excess insurance coverage except a standard umbrella policy, *id. at ¶¶ 25–27.*

The DuBrays contend that Mesa "exhibits the characteristics of a self-insured entity." *DuBray Br. at 8.* For example, they argue, without citing evidence in the record, that "Mesa's Management Committee doubled as a claims committee." *Id.* Also, they argue, again without reference to evidence in the record, that "Mesa endeavored to estimate, or budget for, the potential losses arising from claims brought against it, and had procedures in place whereby Mesa could acquire the funds necessary to cover expected losses". *Id.* The argument of counsel, however, is not evidence, and without some evidence to support these allegations the Court may not rely on them. *Carrillo–Gonzalez v.*

*INS,* 353 F.3d 1077, 1079 (9th Cir.2003) (arguments of counsel are not evidence). To the extent Dubrays are referring to Mesa's effort to cover existing uncovered claims, they cite no authority holding that post-claim financial planning transforms an uninsured entity into a self-insured entity.

The DuBrays argue that "Mesa appointed Mike Williams to negotiate and effectuate settlement with DuBray." *DuBray Br. at 8.* Authorizing an individual to attempt to settle a lawsuit on a party's behalf, however, is simply not the same thing as adjusting an insurance claim. The DuBrays have cited no authority, and the Court is not aware of any, that these acts are the same, or that authorizing an individual to negotiate a claim itself transforms the party into a self-insurer.

Applying the UTPA to every civil defendant that has no insurance for claims asserted against it—the logical result of the Dubrays' argument—is not contemplated in the UTPA's statutory scheme. The Court is mindful that section 33–18–242(8) of the Montana Code provides that the term insurer "includes a person, firm, or corporation utilizing self-insurance to pay claims made against them." The Court does not agree, however, that this provision encompasses every entity that, for whatever reason, is uninsured against a claim. Rather, by its express terms, it includes only those that utilize "self-insurance to pay claims made against them."

As already discussed, unless an entity undertakes acts that tend to show that it was utilizing self-insurance, it is simply uninsured and not subject to the application of the UTPA. To conclude otherwise would be to place nearly all uninsured entities and individuals under the UTPA's regulatory umbrella. There is no support in the Act's language for such an encompassing application.

For all of the foregoing reasons, the Court finds that Montana law does not support the DuBrays' argument that Mesa used self-insurance to pay claims made against it. Having reached this conclusion, the Court will not address Mesa's other arguments directed at this claim and will recommend that Mesa's motion for summary judgment be granted with respect to it.

### ii. Persuasive Authority Supports the Conclusion that Mesa Is Not Self-Insured

Authority beyond Montana also supports the conclusion that Mesa, under the facts of this case, is not self-insured. One commentator has noted that self-insurance has been defined as

> a planned program of paying from a company's own funds for losses sustained, where it recognizes reasonably the potential losses that might be incurred, does all that it can to avoid or reduce this potential, and then provides a means to process and pay for the losses remaining. What distinguishes self-insurance from other forms of insurance is that the risk of loss is assumed by the self-insured entity; it is not shared among a group of entities. Self-insurance is also distinguishable from going "bare," i.e., not providing any means for paying incurred losses, in that a planned program is involved. A true self-insurance plan contemplates the establishment of a fund based on projections of future losses and the identification and measurement of *possible* and *actual* claims against the self-insured entity so that money from the fund may be set aside to pay those claims if and when they come due.

THOMAS W. RAYNARD, *The Local Government as Insured or Insurer,* 20 The Urban Lawyer 103 (1988) (emphasis in original) (citations omitted).

When one applies this definition of self-insurance to the case at hand, the inescapable conclusion is that Mesa was not self-insured. As noted *supra,* Mesa did not perform any of the affirmative acts that would tend to show that it created and maintained a self-insurance plan. It did not establish a fund based on projections of future losses, nor is there any evidence that it endeavored to identify and measure possible and actual claims against it in order to put aside money from the fund should the claims come due.

A leading authority on insurance law also has provided guidance on the issue before the Court as follows:

> Whether a self-insured party is considered to be providing "insurance" depends in large part on (1) the purpose of the analysis, (2) whether the arrangement described as self-insurance is, in reality, an effort by the party to assume insurable risks or merely amounts to a "deductible," and (3) whether the entity has made a conscious, calculated decision to estimate its risk and set aside sufficient funds to cover expected losses, or simply and somewhat off-handedly decided to save the cost of purchasing insurance by merely hoping that no losses would occur.

LEE R. RUSS AND THOMAS F. SEGALLA, *1A Couch on Insurance 3D,* § 10:2 (2006).

Again, under the foregoing analysis, Mesa was not using self-insurance. As already noted, Mesa did not undertake any act that would tend to show that it was using a self-insurance program. Mesa has presented evidence that it did not have a fund for payment of claims and did not establish a reserve for future losses. *SUF at ¶ 23.*

In sum, the Court concludes that the foregoing persuasive authority also supports its finding that Mesa was not "utilizing self-insurance to pay claims made against it."

### b. Infliction of Emotional Distress Claims

With respect to James DuBray's claims against Mesa for negligent and intentional infliction of emotional distress, the Court also will recommend that they be dismissed. In their response to Mesa's prior motion to dismiss, the DuBrays stated that James DuBray "suffered harm *as a result of Defendants['] abuse of process and bad faith.*" *Plaintiffs' Response Brief Opposing Defendants' Brief in Support of Motion to Dismiss ("DuBrays' Prior Br.")* (Court's Doc. No. 10) *at 8* (emphasis added). The DuBrays later acknowledged in the same brief that "Mr. DuBray has alleged that the emotional distress he suffered was personal and *occurred as a result of Defendants' abuse of process and bad faith,* not the commercial endeavors litigated in the underlying lawsuit." *Id. at 19* (emphasis added).

Judge Cebull previously dismissed the DuBrays' abuse of process claim against Mesa. *See Court's Order filed May 12, 2006.* The Court herein has recommended that Judge Cebull grant Mesa's summary judgment motion with respect to the DuBrays' bad faith claim against Mesa. Thus, it appears that the stated bases for the Dubrays' emotional distress claims no longer exist. The Dubrays argue that Count III can stand alone and does not depend upon a predicate tort or contract claim, citing *Sacco v. High Country Independent Press, Inc.,* 271 Mont. 209, 896 P.2d 411 (1995). In *Sacco,* the Montana Supreme Court held that "an independent cause of action for negligent infliction of emotional distress will arise under circumstances where serious or severe emotional distress to the plaintiff was the reasonably foreseeable consequence of the defendant's *negligent* act or omission...." *Id.,* 896 P.2d at 426 (emphasis added). *See also McGinnis v. City of East Helena,* 63 P.3d

512, at ¶ 23, 63 P.3d 512 (Mont.2002). A careful review of the Dubrays' complaint, however, reveals no allegations of negligent conduct.

With respect to the claim for intentional infliction of emotional distress, the Montana Supreme Court held that a plaintiff must prove the same basic elements as in a cause of action for negligent infliction of emotional distress. *Id.* at 428. Although the court chose not to adopt the "outrageous" conduct standard of the Restatement (Second) of Torts, § 46, still there must be some intentional, wrongful conduct. Here, there are no remaining allegations of intentional, wrongful conduct. The Complaint, in paragraphs 12 through 44, describes conduct in "The Underlying Case." *See Complaint, at p. 3.* Paragraphs 45 through 58 contain the Dubrays' allegations regarding "Mesa's Bad Faith." *Id. at p. 14.* Other than the descriptions of the parties and jurisdictional allegations, there are no other factual allegations.

 Dubrays complain of Mesa's conduct in the underlying action. In paragraph 44 of the complaint, for example, the Dubrays complain of Mesa's "motion tactics" in the underlying case. The underlying tort and contract claims have been tried to a final judgment and may not be relitigated. In that action, Dubray Land Services raised various motions for sanctions against Mesa and Judge Cebull duly ruled on those motions. The Dubrays cite no case holding that a non-insurer's failure to settle or other disputed litigation tactics alone can form the basis for the torts of negligent or intentional infliction of emotional distress, and the Court could find none. The Montana Supreme Court has made clear that professional rules violations by opposing counsel are not grounds for relief. *See generally Schuff v. A.T. Klemens & Son,* 303 Mont. 274, 288, 16 P.3d 1002, 1012 (2000). Thus, James Dubray's claims for intentional and negligent

infliction of emotional distress necessarily fail. The Court will recommend that Mesa's motion for summary judgment be granted.

## III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that Mesa's Motion for Summary Judgment (Court's Doc. No. 68) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk of Court shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to these findings must be filed within ten (10) days after receipt hereof, or objection is waived.